In the Matter of the Claim of EWALD SCHMIDT, Respondent, against WOLF CONTRACTING CO., INC., et al., Appellants. STATE INDUSTRIAL BOARD, Respondent.

Third Department, May 9, 1945.

*Finch & Schaefler*, attorneys (*Edward R. Finch* and *Edward Kurland* of counsel), for appellants.

*Nathaniel L. Goldstein, Attorney-General* (*Orrin G. Judd, Solicitor-General; Roy Wiedersum* and *Gilbert M. Landy, Assistant Attorneys-General*, of counsel), for State Industrial Board.

HEFFERNAN, J.   It is conceded that on April 27, 1943, claimant, whose average weekly wage at that time was $48, sustained accidental injuries in the nature of a left inguinal hernia which arose out of and in the course of his employment.   The employer filed a report of the injury with the Department of Labor and the employee filed with the same department a claim for compensation.

In order to effect a cure it was necessary to perform an operation on claimant.   This was done on May 1, 1944.   As a result claimant was totally disabled from April 30, 1944, to June 16, 1944, and on the latter date his disability was present.

By chapter 461 of the Laws of 1944, which became a law on April 1, 1944, subdivision 6 of section 15 of the Workmen's Compensation Law, which deals generally with maximum and minimum compensation payments for permanent and temporary partial, and permanent and temporary total disability, was amended by adding thereto the following provision: " *  *  * and further provided that, because of existing conditions due to the war compensation for permanent or temporary total disability may be in excess of twenty-five dollars but shall not exceed twenty-eight dollars per week for any period of disability arising out of claims accruing during the year commencing June first, nineteen hundred forty-four."

That amendment, because of existing conditions due to the war, increases the maximum compensation rate for permanent and temporary total disability from $25 to $28 per week for one year commencing June 1, 1944.

In construing this amendment the State Industrial Board held that claimant was entitled to receive the maximum rate of payment of $28 per week during the period of disability from June 1, 1944.

No question is raised by the appellants as to the correctness of the award of $25 per week from the date of disablement to June 1st. Only the legality of the increase on and after that date is challenged.

Appellants assert that in applying this amendment to the accident in this case the State Industrial Board has misconstrued the intention of the Legislature; that substantive rights are affected by the amendment; that a retrospective application of the statute to accidents which happened prior to June 1, 1944, renders it unconstitutional.

Three other cases involving the same legal question where a self insurer, the State Insurance Fund and a stock company are parties, were presented simultaneously with the appeal now before us and our decision in the case at bar is decisive of the issues in the other cases.

We have repeatedly said, and so has the Court of Appeals, that the Workmen's Compensation Law is classed as remedial legislation and hence a spirit of liberality should characterize its interpretations in order to effectuate its intent and purpose.

We are not concerned with the wisdom or the justice of the amendment in question. Our only duty is to ascertain the meaning and intent of the lawmakers. The intention of the lawmakers is the law. That intention is to be gathered from the necessity or the reason of the enactment. In the construction of a statute we are not confined to the literal meaning of the words. When the intention can be disclosed from the statute, words may be modified or altered so as to obviate all inconsistency with such intention. To give this amendment the construction which appellants urge would produce an absurd and illogical result. " ' Every interpretation that leads to an absurdity should be rejected.' " (*Flynn* v. *Prudential Ins. Co.*, 207 N. Y. 315, 318.)

In *People* v. *Ryan* (274 N. Y. 149, 152) the court said: " In the interpretation of statutes, the spirit and purpose of the act and the objects to be accomplished must be considered. The legislative intent is the great and controlling principle. Literal

meanings of words are not to be adhered to or suffered to defeat the general purpose and manifest policy intended to be promoted;' all parts of the act must be read and construed together for the purpose of determining the legislative intent, and if the statute is ambiguous and two constructions can be given, the one must be adopted which will not cause objectionable results or cause inconvenience, hardship, injustice or mischief or lead to absurdity.''

Article I, section 18 of the State Constitution so far as material here provides: '' Nothing contained in this constitution shall be construed to limit the power of the legislature to enact laws * * * for the payment * * * of compensation for injuries * * * or for death of employees * * * ''.

A reading of the amendment clearly indicates to us that the Legislature intended that it should apply to injuries sustained prior to June 1, 1944, if disability is present and payments are due during the year commencing on that date.

It is unreasonable to assume that the Legislature intended that a workman who suffers injury on May 31, 1944, is any less affected by the phrase '' because of existing conditions due to the war '' than one injured on June 1st of the same year. The disability, if any, in both cases would be present during the year commencing June 1st. Both workmen would be subject to the same existing conditions due to the war and during the same period of time. We cannot attribute to the Legislature an intent to make such an unfair discrimination.

It is not the injury which must be sustained during the year commencing June 1st but the disability or incapacitation which must occur in order to bring the workman within the provisions of the amendment.

In enacting the amendment the Legislature recognized the existence of an emergency '' because of existing conditions due to the war '' and provided a remedy. If the Legislature had intended to restrict the increase in awards to workmen injured after June 1st, it could have accomplished that result without the use of the words '' because of existing conditions due to the war ''. As to those employees the words are superfluous. We should not assume that the lawmakers inserted those words in the amendment for no useful purpose. (*People* v. *Dethloff*, 283 N. Y. 309; *Allen* v. *Stevens*, 161 N. Y. 122, 145; *Palmer* v. *Van Santvoord*, 153 N. Y. 612.)

When the amendment is read in the light of its spirit and purpose and consideration is given to the condition sought to be remedied as well as the history of the times it is clear that the

legislative intention was to make it applicable to claims for disability accruing during the year commencing June 1st.

It is not the original *claim* but the *disability* which is subject to the time limitation. When the injuries are suffered the period of disability is uncertain. A workman may sustain injuries with no resultant disability in which case no compensation is due. A disability does not arise out of a claim. It is the claim which arises out of the disability.

If the Legislature intended to limit the force of the amendment, as suggested by appellants, unquestionably it would have used language indicating unequivocally that the increased benefits would be applicable only to those sustaining injuries during the specified year. We think it is unreasonable to assume that the Legislature intended to confer benefits on a small group of workmen sustaining injuries during the year beginning June 1st.

Then, too, it is quite illuminating to note that the title of subdivision 6 of section 15 is: "Maximum and minimum *compensation* for *disability*."

Other sections of the Workmen's Compensation Law (§§ 10, 15, 16, 20 and 25) give support to the view that compensation is awarded for disability and must be paid "as it *accrues*."

The Workmen's Compensation Law creates the liability under which compensation is required to be paid by the employer to an injured employee or, in the event of his death, to his dependents. The obligation is purely statutory and does not arise out of an employer-employee relationship. Liability imposed by the act is neither *ex contractu* (*Matter of Smith* v. *Heine Boiler Co.*, 224 N. Y. 9) nor *ex delictu* (*Matter of Doey* v. *Howland Co.*, 224 N. Y. 30.)

The spirit and purpose of the amendment are of material assistance in its interpretation. The rule is stated in McKinney's Consolidated Laws of New York, Book 1, Statutes [1942 ed.], section 96 in these words: "Another basic consideration in the interpretation of a statute is the general spirit and purpose underlying its enactment. Thus it is frequently held that the words of a statute are construed with reference to its subject-matter and the object sought to be obtained; and that construction is to be preferred which furthers the object, spirit and purpose of the statute. In all cases the legislative intent is to be effectuated; not frustrated, and a particular provision of a statute is not to be given a special meaning at variance with the general purpose, unless it is clear that the Legislature so intended. If the spirit and purpose of an act find fair expression therein, it is construed accordingly, even though the interpre-

tation thus placed upon it is contrary to the literal meaning of some of its provisions; which is to say that a court in construing a law will sometimes be guided more by its purpose than its phraseology * * * ".

This quotation is supported by judicial approval. (*Chittenden Lumber Co.* v. *Silberblatt & Lasker, Inc.*, 288 N. Y. 396; *Surace* v. *Danna*, 248 N. Y. 18; *People* v. *Ryan*, 274 N. Y 149; *Hill* v. *American Surety Co.*, 200 U. S. 197; *City Bank F. T. Co.* v. *N. Y. C. R. R. Co.*, 253 N. Y. 49.)

The aim and purpose of the Workmen's Compensation Law are stated in *Matter of Petrie* (215 N. Y. 335, 338) in the following language: "The Workmen's Compensation Law was adopted in deference to a widespread belief and demand that compensation should be awarded to workmen who were injured and disabled temporarily or permanently in the course of their employment, even though sometimes the accident might occur under such circumstances as would not permit a recovery in an ordinary action at law. The underlying thought was that such a system of compensation would be in the interest of the general welfare by preventing a workman from being deprived of means of support as the result of an injury received in the course of his employment. The statute was the expression of what was regarded by the Legislature as a wise public policy concerning injured employees."

The history of the times and the conditions of the country are helpful in construing the amendment. (*Woollcott* v. *Shubert*, 217 N. Y. 221; *People* v. *Fitzgerald*, 180 N. Y. 269; *O'Brien et al.* v. *Mayor, etc., of New York*, 139 N. Y. 543; McKinney's Cons. Laws of N. Y., Book 1, Statutes [1942 ed.], § 124.)

In the consideration of the mischief to be remedied by the amendment the intention of the Legislature becomes apparent. In McKinney's Consolidated Laws of New York, Book 1, Statutes [1942 ed.], section 95, it is written: "In construing statutes the cause and necessity of a law are always of value. Thus courts should look at the old law, the mischief, and the remedy, and construe the act in question so as to suppress the evil and advance the remedy. As was said by Chancellor KENT, the intent with which statutes were enacted ' is to be collected from the context, from the occasion and necessity of the law, from the mischief felt and the objects and the remedy in view.' Where the words are obscure so that the legislative intent does not clearly appear, it may be inferred from the cause or necessity of the statute. * * * ".

Appellants contend that the retroactive application of the amendment to workmen injured prior to June 1, 1944, amounts to an *ex post facto* law. True it is that to require payments for periods of disability prior to the passage of the statute would be retroactive. To provide for increased payments in the future is a prospective and not a retrospective application of the law.

The application of the amendment to workmen injured prior to June 1, 1944, who are permanently or temporarily totally disabled and whose disability was present during the year commencing on that date is not unconstitutional.

There is a marked difference between the status of an employer and an insurance carrier, whether it be the State Insurance Fund, a stock company, or, as in this case, a mutual company. All three such insurers essentially have the same relationship to the employer. The basic liability under the Workmen's Compensation Law to provide insurance rests on the employer. (Workmen's Compensation Law, §§ 10, 50.) The employer is the one liable for compensation to an injured workman. If he chooses to contract with an insurance carrier to protect himself against the risks of industrial accidents, he may do so, or he may avail himself of the privilege of self insurance.

Appellants urge that the contract between the employer and its insurance carrier is impaired by this amendment and that the statute violates the due process clauses of the State Constitution (art. I, § 6) and the Constitution of the United States (14th Amendt., § 1).

That argument is without merit. As already indicated the State Constitution (art. I, § 18) removes all constitutional limitations on the power of the Legislature to enact laws dealing with workmen's compensation. The amendment is clearly within the provisions of this article and hence the due process clause contained in article I, section 6 is not violated.

Liability under the Workmen's Compensation Law does not arise out of contract. That liability has its origin not in contract but in legislative fiat decreed in accordance with constitutional mandate and hence does not violate the contract clause of the United States Constitution.

Even if it be assumed that liability under the Workmen's Compensation Law is contractual, the amendment is not thereby violative of the provisions of the Constitution of the United States. The police power of the State may be exercised to affect the due process of law clause as well as the impairment of contract clause of the Federal Constitution.

The subject matter of workmen's compensation reposes within the control of the Legislature.

A law enacted pursuant to rightful authority is proper, and private contracts are entered into subject to that governmental authority. (*Norman* v. *B. & O. R. Co.*, 294 U. S. 240; *Union Dry Goods Co.* v. *Georgia P. S. Corp.*, 248 U. S. 372; *Louisville & Nashville R. R.* v. *Mottley*, 219 U. S. 467.)

The constitutional prohibition that no State shall pass any law which shall deprive a person of life, liberty or property without due process is not absolute. (*Matter of People* [*Tit. & Mtge. Guar. Co.*], 264 N. Y. 69; *Home Bldg. & L. Assn.* v. *Blaisdell*, 290 U. S. 398.)

In the case of *Sliosberg* v. *New York Life Ins. Co.* (244 N. Y. 482) at page 497, in discussing the question of impairment of the obligation of contract the court said: "All contracts are made subject to the exercise by government of a sovereign right to legislate for the protection of 'the lives, health, morals, comfort and general welfare of the people.' (*Manigault* v. *Springs*, 199 U. S. 473.) That the government may be required, in times of public stress, so to legislate as to nullify private contracts is an implied term of the law of every contract, so that such legislation, if enacted, does not impair the obligation of the contract within the meaning of the limitation. (*Marcus Brown Co.* v. *Feldman*, 256 U. S. 170.) "

The amendment in question was enacted in the exercise of the police power of the State and hence violates neither its Constitution nor the Federal Constitution. The principle of workmen's compensation is the promotion of public good. (*Matter of Petrie*, 215 N. Y., *supra*, 338; *Matter of Post* v. *Burger & Gohlke*, 216 N. Y. 544; *New York Central R. R. Co.* v. *White*, 243 U. S. 188.)

In the case of *Guttag* v. *Shatzkin* (230 N. Y. 647, 650) the court said: "While the States are subject to the contract clause of section 10, article I and section 1, article XIV of the United States Constitution, the police power of the States may affect contracts and modify property rights without violation of these provisions. Conceding the health, safety and morals of its citizens to be involved and the circumstances to justify a proper interference by the State, neither the contract nor due process of law clause stand in the way. (*Union Dry Go. ds Co.* v. *Georgia Public Service Corporation*, 248 U. S. 372.) These sections of our Federal Constitution and the police power of the States harmonize and never conflict. The only question here is one of fact, not one of law; do the facts call into existence the

power reserved to the States to legislate for the safety and health of the people. Within its sphere the police power of the States is not unlike the war power of the nation. Both are rules of necessity, impliedly or expressly existing in every form of government, the one to preserve the health and morals of a community, the other to preserve sovereignty."

For these reasons the award should be affirmed, with costs to the State Industrial Board.

All concur.

Award affirmed, with costs to the State Industrial Board. [See *post*, p. 870.]