David E. PRICE et al., Appellees Below,
Appellants,

v.

ALL AMERICAN ENGINEERING COM-
PANY, Appellants Below, Appellees.

Supreme Court of Delaware.

April 23, 1974.

Oliver V. Suddard and John Biggs, III, Wilmington, for appellants.

Max S. Bell, Jr., Howard M. Berg, Alfred M. Isaacs, Richard I. G. Jones, B. Wilson Redfearn, Carl Schnee, William F. Taylor, F. Alton Tybout, Wilmington, for appellees.

Before HERRMANN, C. J., and CAREY, and DUFFY, JJ.

HERRMANN, Chief Justice:

The appeals in these workmen's compensation cases require us to pass upon the constitutionality of 58 Del.L.Ch. 96, as amended by 58 Del.L.Ch. 311 (hereinafter "the Statute").

I.

The appellants are employees who were totally disabled prior to May 27, 1971. The appellees are the employers and their insurance carriers. The appellants challenge the holding of the Superior Court, reversing the decision of the Industrial Accident Board, that the Statute is unconstitutional and that, therefore, payments thereunder to the appellants may not be authorized.

The Statute amended 19 Del.C.Ch. 23 by adding a new § 2334.[2] The effect of the new provisions is to provide increased

2. 19 Del.C. § 2334 provides:

"§ 2334. Benefit adjustment.

"(a) Any person who is totally disabled on or after May 27, 1971, or any widow, widower or dependent who is receiving benefits under § 2330 on or after May 27, 1971, shall be entitled to an additional amount of compensation as calculated under subsections (b) and (c) of this section, provided that the total amount to be received shall not exceed the maximum weekly benefit rate in § 2324 effective on September 1, 1970, or the benefit derived from § 2330 as of September 1, 1971.

"(b) In any case where a totally disabled person, or a widow, widower or a dependent is presently receiving the maximum weekly in-

weekly benefits to claimants totally disabled either before or after May 27, 1971. To generate funds sufficient to implement the increase, the Statute amended 19 Del.C. § 2395 [3] to provide that insurance carriers and self-insured employers will be taxed a sum not to exceed one half of one percent of all workmen's compensation or employer liability premiums received by the carrier, or of the amount a self-insured employer would have had to pay as premiums for the

preceding year. The tax is made an element of loss for purposes of workmen's compensation premium rates; and it is directed that the funds thus collected be paid over by the Board to the State Treasurer to be deposited in a special account to be known as "Industrial Accident Board Second Injury and Contingency Fund". The Statute also amended 19 Del.C. § 2396 [4] by allowing reimbursement to carriers and self-insured employers, for sums paid pur-

come benefit rate applicable at the time such award was made, the supplemental allowance shall be an amount which when added to such award would equal the maximum weekly benefit rate effective on September 1, 1970, or the benefit derived from § 2330 as of September 1, 1971.

"(c) In any case where a totally disabled person, or a widow, widower or dependent is presently receiving less than the maximum weekly income benefit rate applicable at the time such award was made, the supplemental allowance shall be an amount equal to the difference between the amount the claimant is presently receiving and a percentage of the maximum weekly benefit rate effective on September 1, 1970, or the benefit derived from § 2330 as of September 1, 1971, determined by multiplying it by a fraction, the numerator of which is his present award and the denominator of which is the maximum weekly rate applicable at the time such award was made."

3. 19 Del.C. § 2395 provides:

"§ 2395. Second injury and contingency fund; payments by insurance carriers and self-insurers.

"(a) Every insurance carrier insuring employers who are or may be liable under this chapter to pay for compensation for personal injuries to or death of their employees under the provisions of this chapter, shall pay to the board annually, on or before March 1 and October 1 of each year a sum not to exceed one half of 1 percent at each date on all workmen's compensation or employer liability premiums received by the carrier during the calendar year next preceding the due date of such payment.

"(b) Every employer carrying his own risk and thereby insuring himself under the provisions of this chapter, on or before January 30 and October 1 of each year, shall pay to the board a sum equal to one half of 1 percent at each date of the premium which the employer would have had to pay for the preceding year for workmen's compensation or employer liability insurance, the premium being in accordance with classifications and

premium rates approved by the board for the purpose of fixing compensation and insurance rates.

"(c) Such sums shall be paid by the Board to the State Treasurer, to be deposited in a special account known as 'industrial accident board second injury and contingency fund.' Such sums shall not be a part of the general fund out of the State of Delaware. Any balance remaining in such special account at the end of any fiscal year shall not revert to the general fund.

"(d) The amount paid under this section shall constitute an element of loss for the purpose of establishing workmen's compensation premium rates."

4. 19 Del.C. § 2396 provides:

"§ 2396. Reimbursement of carriers and self-insurers from industrial accident board second injury and contingency fund.

"With respect to payments made by any insurance carrier or self-insurer under § 2334, such insurance carrier or self-insurer annually on or before December 1 and June 1 of each year, shall file with the industrial accident board for submission to the treasurer of the State a report on a form prescribed by the industrial accident board setting forth the money expended for such additional payments made during the previous calendar year or portion thereof under § 2334. The industrial accident board shall audit these reports before submission to the treasurer of the State to determine their validity. Reimbursement to such insurance carrier or self-insurer shall be made annually on the 1st of January and the 15th of July each year. With respect to payments made by any carrier or self-insurer under § 2334, such carrier or self-insurer annually on or before June 1 of each year, shall file with the treasurer of the State a report, on a form prescribed by the industrial accident board, setting forth the money expended for such additional payments made during the previous calendar year under § 2334. Reimbursement to such insurance carrier or self-insurer shall be made annually on the 15th day of July of each year."

suant to 19 Del.C. § 2334, from the Second Injury and Contingency Fund.

On appeal from the Industrial Accident Board which ordered the additional benefits provided by the Statute, the Superior Court reversed, holding that the Statute which increases benefits to the appellants retroactively (characterized by the appellees as "prospective payments to a retrospectively determined class") is unconstitutional for two reasons: first, because it impairs contractual rights and obligations in violation of Article 1, Section 10 of the Federal Constitution; secondly, because it takes away vested property rights without due process of law in contravention of Article I, Section 7 of the Delaware Constitution, Del.C. Ann., and the Fourteenth Amendment to the Federal Constitution.

## II.

■ After careful consideration of the delicate issues involved here, we have concluded that the Statute is violative of neither the Contract Clause nor the Due Process Clause.

■ The Contract Clause is not absolute and is not to be read with mathematical precision. Home Building and Loan v. Blaisdell, 290 U.S. 398, 54 S.Ct. 231, 78 L. Ed. 413 (1934); W. B. Worthen Co. v. Thomas, 292 U.S. 426, 54 S.Ct. 816, 78 L.Ed. 1344 (1934). Economic and social evolution require that the Clause not be permitted to curtail legislative endeavors by the States to protect the vital interests of their people through the use of the police power, even though rights of contracting individuals may be adversely affected. The States may not use the police power to strike away substantive rights and obligations of the contracting parties without paying compensation; only minor infringements will be permitted. Globe Liquor Co. v. Four Roses Distillers Co., Del.Supr., 281 A.2d 19, 21 (1971); see also Hockman, The Supreme Court and the Constitutionality of Retroactive Legislation, 73 Harv.L.Rev. 692 (1960).

In the instant case, to the extent that there may be any contractual impairment, it is deemed "minor", within the meaning of the *Globe* definition, for the reason that the Statute provides for reimbursement to the insurance carrier and self-insurer from the Second Injury and Contingency Fund of all moneys paid out pursuant to the supplemental payment plan devised by the Statute. See 19 Del.C. §§ 2334, 2396; Spence v. University of Delaware, Del.Supr., 311 A.2d 867 (1973).

■ The impairment of contract argument can be answered on more fundamental grounds, however: we are of the opinion that the Delaware Workmen's Compensation Act, and the employee-employer relationships created thereby, are not grounded in contract. A mandatory Act, like ours (19 Del.C.Ch. 23), creates a "status-oriented" rather than a "contractual" relationship. We approve and adopt the rationale set forth in McAllister v. Board of Education, etc., 79 N.J.Super. 249, 191 A.2d 212, 217–218 (1963):

> "The courts have used the term 'contract' in workmen's compensation cases much as they have used that term when speaking of marriage 'contracts'. In employment, like in marriage, the parties must agree to enter into the relationship, but once they do, the law dictates to them their rights and liabilities. And, as in marriage—within legal limitations having nothing to do with the impairment of contract—the law may change those rights and liabilities, not only at any time during the relationship but sometimes even after it has terminated, as for example after the employee has stopped working for the employer because of an injury."

Accord: Argonaut Mining Co. v. Industrial Accident Commission, 104 Cal.App.2d 27, 230 P.2d 637 (1951); Hall v. Industrial Commission of Ohio, 131 Ohio St. 416, 3 N. E.2d 367 (1936); Fay v. Industrial Commission, 100 Utah 542, 114 P.2d 508 (1941); Grenier v. Alta Crest Farms, 115 Vt. 324, 58 A.2d 884 (1948); Mattson v. Dept. of Labor and Industrials, 176 Wash. 345, 29

P.2d 675 (1934); Schmidt v. Wolf Contracting Co., 269 App.Div. 201, 55 N.Y.S. 2d 162 (1945). Accordingly, we hold that the problem before us involves statutory, and not contractual, rights and obligations; that, therefore, the Contract Clause is inapposite.

The appellees also contend that the extent of their obligations, resulting from total disability of the appellants, became established at the time of injury; that the Statute deprives the insurance carrier or employer of the right to stand on that limitation. Thus, appellees argue, the Statute deprives them of vested property rights retrospectively without due process of law.

■■ Assuming, *arguendo*,[5] that vested rights are taken here, we believe it to be a permissible taking, not violative of due process. Broadly stated, a statute may retroactively reach property rights which have vested and may create new obligations with respect thereto, provided that the statute is a valid exercise of police power. See 16A C.J.S. Constitutional Law §§ 417, 423; Am.Jur.2d "Statutes", § 526. See also Board of Education of Central School District No. 1 v. Miles, 15 N.Y.2d 364, 207 N. E.2d 181, 259 N.Y.S.2d 129 (1965).

Although a Workmen's Compensation Law is generally acknowledged to be a valid exercise of police power, there are two views on the question of whether a retroactive supplementary payment plan, such as is created by the Statute, is a permissible exercise of the police power. The appellees cite cases to support their position, which appears to be the majority view, that such legislation contravenes the Due Process Clause because a claimant's right to compensation became vested on the date of injury and could not be reduced or enlarged by legislation enacted subsequent to that date. See Warner v. Zaiser, 184 Minn. 598, 239 N.W. 761 (1931); Bethlehem Shipbuilding Corp. v. Mullen, Del.Super., 2 W. W.Harr. 55, 119 A. 314 (1922); Riggs v.

Lehigh Portland Cement Co., 76 Ind.App. 308, 131 N.E. 231 (1921); Reggep v. Lunder Shoe Products Co., Me.Supr., 241 A.2d 802 (1968); Preveslin v. Derby and Ansonia Developing Co., 112 Conn. 129, 151 A. 518 (1930); Aetna Casualty and Surety Co. v. Industrial Accident Commission, 30 Cal.2d 388, 182 P.2d 159 (1947); Casieri's Case, 286 Mass. 50, 190 N.E. 118 (1934).

We find more persuasive, however, the rationale and rule prevailing in New York and Michigan. See Schmidt v. Wolf Contracting Co., 269 App.Div. 201, 55 N.Y.S.2d 162 (1945) affirmed *per curiam* at 295 N.Y. 748, 65 N.E.2d 568 (1946); Lahti v. Fosterling, 357 Mich. 578, 99 N.W.2d 490 (1959); Clark v. Chrysler Corp., 377 Mich. 140, 139 N.W.2d 714 (1966). In those jurisdictions, a broader interpretation is given to the scope of a state's police power in this area of the law. In *Schmidt*, the Court rejected both the impairment of contract and the vested rights arguments presented here, stating: (55 N.Y.S.2d at pp. 170–171.)

> " 'While the states are subject to the contract clause of section 10, article 1 and section 1, article 14, of the United States Constitution, the police power of the states may affect contracts and modify property rights without violation of these provisions. Conceding the health, safety, and morals of its citizens to be involved, and the circumstances to justify a proper interference by the state, neither the contract nor the due process of law clause stand in the way. Union Dry Goods Co. v. Georgia Public Service Corporation, 248 U.S. 372, 39 S.Ct. 117, 62 L.Ed. 309. * * *. These sections of our federal Constitution and the police power of the states harmonize and never conflict. The only question here is one of fact, not of law: Do the facts call into existence the power reserved to the states to legislate for the safety and health of the people? * * *.' "

We approve the foregoing rationale and conclusion.

---

5. Since insurance carriers and self-insurers have the right to reimbursement for the supplemental payments, it is uncertain whether their rights are being affected substantively at all.

Again assuming *arguendo* modification of property rights, the situation in the instant case justifies such modification.

■ It is undisputable that the changes in the workmen's compensation plan brought about by the Statute constitute express recognition by the General Assembly of the fact that the compensation benefit rates, then payable to totally disabled workers, had been rendered inadequate by an inflationary economy. While courts do not favor retroactive legislation, effect is impelled if, as here, the retrospective legislative intent is unmistakable.[6] See 82 C.J. S. Statutes § 414; 16 Am.Jur.2d "Constitutional Law", § 423; DiStefano v. Lamborn, Del.Super., 7 Terry 195, 83 A.2d 300 (1951). We are obliged to effectuate that clear legislative intent.

■ Moreover, we think that the basic nature of workmen's compensation compels the result we reach here. A fundamental purpose of workmen's compensation is to shift the cost of employment injuries to the consumer as part of the cost of production. 1 Schneider, Workmen's Compensation, Sec. 3 (1941). The Law places such risks of employment upon the shoulders of the employer, who can protect himself with liability insurance and pass the costs of such protection on to the consumer. See Sherman, The Jurisprudence of the Workmen's Compensation Laws, 63 U.Pa.L.Rev. 823 (1915). This basic risk-spreading purpose and effect, and the fact that insurance carriers and self-insurers are reimbursed from the Second Injury and Contingency Fund

for supplementary payments made, refute the appellees' vested rights argument, in our view, especially in the face of the State's manifest and proper concern for providing an economically adequate level of compensation benefits.

Finally, in return for workmen's compensation coverage, an employee surrenders the common law right to sue the employer for negligence; and monetary awards available to him under the Workmen's Compensation Law are substantially lower than in ordinary negligence litigation. The totally disabled worker, who may never enter the labor market again, is thus left at the mercy of an inflationary economy.

Accordingly, we hold the Statute constitutional and not violative of either the impairment of contracts or due process guaranties.

### III.

Resolution of the constitutional issues is not dispositive of the cases, however. The following issues were also presented to the Superior Court but were not reached because of the conclusion below that the Statute is unconstitutional. Those issues are before us now and we reach them in view of our contrary view on the constitutional questions.

The appellees raise the question of whether insurance carriers or self-insurers have a right of reimbursement from the Second Injury and Contingency Fund (19 Del.C. § 2395) for moneys paid under 19 Del.C. § 2327.[7]

---

6. The Superior Court expressly found that the Legislature intended to make the benefits payable to a retrospective class of workers. Even under the Enrolled Bill Doctrine, under which nothing but the Bill itself is admissible to prove its contents, this intent is clear. See Ingersoll v. Rollins Broadcasting Co., Del.Supr., 269 A.2d 217 (1970).

7. 19 Del.C. § 2327 provides:
"§ 2327. Compensation for subsequent permanent injury: special fund for payment.
"Whenever a subsequent permanent injury occurs to an employee who has previously

sustained a permanent injury, from any cause, whether in line of employment or otherwise, the employer for whom such injured employee was working at the time of such subsequent injury, shall be required to pay only that amount of compensation as would be due for such subsequent injury without regard to the effect of the prior injury. Whenever such subsequent permanent injury in connection with a previous permanent injury results in total disability as defined in § 2326 of this title, the employee shall be paid compensation for such total disability, as provided in § 2324 of this title, during the continuance of total disability, such compensation

Prior to the enactment of the Statute, when an employee became totally disabled due to two permanent injuries, § 2327 provided for total disability benefits to be paid out of the Second Injury Fund. Prior to the Statute, the insurer obtained reimbursement for § 2327 payments from the Second Injury Fund in accordance with the then-governing 19 Del.C. § 2396.[8] The Statute repealed the former § 2396 and replaced it with the new § 2396 which provides for reimbursement from the newly-created Second Injury and Contingency Fund for payments made pursuant to § 2334; but no provision is made therein for reimbursement from that Fund for payments made pursuant to § 2327.

■■■■ While it is, of course, impermissible to imbue a statute with a meaning in excess of, or contrary to, legislative design, we think that necessary implication impels the conclusion that the Statute was not intended to terminate the right of reimbursement from the newly titled Fund for funds paid out under § 2327. We do not think it reasonable to believe that, in enacting the Statute, the General Assembly intended to create the potentially chaotic and onerous situation for the Board and the industry that would result from the shifting of the long-standing administrative burdens of record keeping and cash disbursements from the insurance companies and self-insurers to the Board—a task for which the Board is ill suited. This would be the result of a literal reading of the new § 2396. Absent an express legislative indication to the contrary, we interpret the Law to avoid such consequence. We are convinced that, at most, the omission from § 2327 and § 2396 of reference to reimbursement of § 2327 payments from the Fund

was legislative inadvertence which, under general rules of statutory construction, we are empowered to cure in the implementation of clear legislative intent. Sutherland, Statutory Construction, Vols. II, III, §§ 2007, 2012, 5401–2 (3d Ed.).

■■■■ Accordingly, we hold that insurers and self-insurers have the right under the present § 2327 and § 2396 to reimbursement from the Second Injury and Contingency Fund for payments made under § 2327.

### IV.

The appellees also contend that the decisions of the Industrial Accident Board must be reversed because the awards of compensation in these cases were made upon motion, without notice and opportunity to be heard.

■■■■ General requirements for notice and hearing are provided in the Law. 19 Del.C. §§ 2345, 2347. No reason appears for excepting § 2334 matters from those due process requirements. Accordingly, we hold it was reversible error for the Board to act under § 2334 without due notice and opportunity to be heard. It follows that these cases must be remanded to the Industrial Accident Board for correction of that error.

The appellees also contend that the attorneys' fees allowed by the Industrial Accident Board were not reasonable. Without ruling upon the reasonableness of any award made, it appears that reconsideration of fee allowances will now be appropriate and necessary in the light of the remand and the present status of these cases. Accordingly, we decline to rule upon the

---

to be paid out of a special fund known as 'industrial accident board second injury and contingency fund.' "

8. 19 Del.C. § 2396, prior to the Statute, provided:
   "§ 2396. Reimbursement of carriers and self-insurers from Second Injury Fund.
   "Any insurance carrier or self-insurer who makes payments to an employee for total disability in accordance with section 2327 of

this title, upon an award being made for the same by the Board, shall be entitled to reimbursement for such payments from the 'Industrial Accident Board Second Injury Fund'. The reimbursements to such carrier and self-insuring employer shall be made upon a semi-annual basis, on the fifteenth day of January and July of each year. The reimbursements shall be made upon warrants, on the Treasurer of the State of Delaware, signed by the Secretary of the Board."

reasonableness of the fee allowances made at earlier and inconclusive stages of these cases.

## V.

Finally, we have the appellees' argument that the Second Injury and Contingency Fund is inadequately funded to meet the requirements of the Statute, as set forth in the new § 2334. This contention is beyond the scope of judicial review and cure. If the legislative plan under the Statute is inadequately funded, the General Assembly must deal with the problem of funding the socio-economic program it has prescribed.

\*   \*   \*   \*   \*   \*

Reversed with directions to remand to the Industrial Accident Board for further proceedings consistent herewith.