Charles **MERGENTHALER**, et al., Randolph W. Pannell, Robert Logan, et al., Kenneth Stagg, Donald E. McDaniel, et ux., Elizabeth J. Tull, et al., Paul G. Nichols, et al., Walter James Moyer and Douglas Moyer, Plaintiffs,

v.

**ASBESTOS CORP. OF AMERICA, INC., et al., Defendants.**

Superior Court of Delaware, New Castle County.

Submitted: June 26, 1987.
Decided: Sept. 14, 1987.

See also 534 A.2d 281.

Thomas C. Crumplar, and Mary Ann Matuszewski, of Jacobs & Crumplar, P.A., Wilmington, for plaintiffs.

Mary Pat Trostle, and Philip B. Bartoshesky, of Biggs & Battaglia, Wilmington, for defendant Haveg Industries, Inc.

TAYLOR, Judge.

Plaintiffs in eight suits assert causes of action alleging that they suffer from asbestos-related diseases which were caused in whole or in part by exposure to asbestos at the Marshallton plant of Haveg Industries, Inc. [Haveg]. Certain of the plaintiffs were exposed to asbestos at that plant only prior to June 15, 1949 and were not employed by Haveg thereafter.

Haveg has moved for summary judgment with respect to claims where asbestos exposure occurred while plaintiffs were employed by Haveg.

The issue is whether the asbestos-related diseases of these plaintiffs, which according to the allegations of plaintiffs are related to their pre-June 15, 1949 exposure to asbestos at the Haveg plant, are permissible tort claims or are barred because of availability of workmen's compensation.

■ The parties are in agreement that under Delaware law, an employee may not sue the employer for an injury or occupational disease for which the employee is entitled to recover workmen's compensation. 19 *Del.C.* § 2304; *cf. Kofron v. Amoco Chemical Corp.*, Del.Supr., 441 A.2d 226 (1982). The parties place emphasis on June 15, 1949 because on that date the Delaware Workmen's Compensation Law was amended to include diseases such as those caused by asbestos exposure as compensable occupational diseases. 47 *Del. Laws* Ch. 270.[1] Prior to that date compensable occupational diseases were listed as specific diseases, and the enumeration did not include asbestos-related diseases. 41 *Del.Laws* Ch. 241.

---

1. 47 *Del.Laws* Ch. 270 (approved June 15, 1949) amended 6114, Sec. 44 of Chapter 175 of the Revised Code of Delaware by substituting the following third paragraph thereof:

Compensable occupational diseases shall include all occupational diseases arising out of and in the course of employment only when the exposure stated in connection therewith has occurred during the employment and the disability has commenced within five months after the termination of such exposure.

This decision involves plaintiffs whose only employment with Haveg ceased before June 15, 1949 and in the course of employment were exposed to asbestos. Those plaintiffs divide into two groups: (1) those who had employment-related asbestos exposure after June 15, 1949, and (2) those who after June 15, 1949 had asbestos exposure in the course of employment with a different employer covered by workmen's compensation. Since all of these plaintiffs assert that their exposure to asbestos occurred during employment with Haveg, their claims, if proved, satisfy the definition of that requirement of 19 *Del.C.* § 2301(4).

### I.A.

Plaintiffs' theory is that the Workmen's Compensation Law did not provide compensation for asbestos-related diseases before the 1949 amendment and, therefore, no bar exists against a tort action based solely on pre–1949 exposure. This apparently is bottomed on the proposition that the bar which prevents an employee from bringing a tort action against the employer (19 *Del.C.* § 2304) is co-extensive with the right of the employee to receive compensation under the Workmen's Compensation Law. *Cf. Hendrickson v. Continental Fibre Co.,* Del.Super., 136 A. 375 (1926); *Battista v. Chrysler Corp.,* Del.Super., 454 A.2d 286 (1982). Applying that proposition, plaintiffs argue that the law which was in effect at the time of exposure to asbestos did not confer the right to workmen's compensation and, hence, did not bar the right to pursue a tort claim.

Haveg's contention is that the right to workmen's compensation for an asbestos-related disease stems from the time when the disease became evident. Applying that premise, Haveg contends that since in all of the present cases the disease became evident after 1949, workmen's compensation has been available for that disease and,

hence, a tort claim based on that disease is barred.

In general, workmen's compensation applies to an injury which is traceable to a specific accident or event. In those cases, eligibility to receive compensation can be readily determined from the nature of the occurrence, the time for filing claims involving the injury can be ascertained and the cause and nature of the injury can be determined. However, a disease-producing substance such as asbestos does not produce physical symptoms at the time of exposure. Studies indicate that there may be a lapse of many years after exposure to asbestos before an asbestos-related disease manifests itself. Therefore, most of the workers exposed to such disease-producing conditions have had no evidence of disease within the statutory time limits for claims under the 1949 amendment measured from time of exposure.

Prior to 1955, all requirements relating to occupational disease claims were determined with reference to the time of last exposure to the disease-producing condition.[2] An amendment in 1955 permitted a claim for occupational disease compensation to be filed within one year after acquiring knowledge that the disease could have been job-related, if filed within five years after the last exposure, but retained the other requirements of 19 *Del.C.* § 2301 and § 2342.[3] 50 *Del.Laws* Ch. 339, Sec. 19. An amendment in 1959 permitted notice of the disease to be given to the employer within six months after the worker acquired knowledge that the disease could have been job-related, but retained the requirement of 19 *Del C.* § 2301.[4] 52 *Del. Laws* Ch. 101, Sec. 1. The amendments in 1974 finally eliminated the remaining references to time of exposure, making the date of acquiring knowledge that the disease could have been related to employment the determinant for all purposes.

---

**2.** Disability must commence five months after last exposure (19 *Del.C.* (1953 ed) § 2301), notice to employer must be given within five months after last exposure (*Id.,* § 2342), and claims must be filed within one year after exposure (*Ib.,* § 2361).

**3.** See Footnote 2 for description.

**4.** See Footnote 2 for description.

■ These cases were filed in 1981 through 1984. Such suits must be filed within two years after plaintiff had knowledge that his physical condition was attributable to asbestos exposure. *Stagg v. Bendix Corp.*, Del.Super., 472 A.2d 40 (1984). Therefore, for purposes of these motions, it will be assumed that plaintiffs' asbestos-related disease first became manifest not earlier than 1979—after the present pertinent workmen's compensation provisions became effective.

■ Plaintiffs argue that their right to receive workmen's compensation must be determined according to the Workmen's Compensation Law which was in effect at their last asbestos exposure at Haveg and that to apply the statute as amended after the last exposure would be to violate the principle which forbids retroactive application of a statute. This argument must be rejected for several reasons. First, because of the late manifestation of the disease, plaintiffs had no claim which they could assert before 1979 and, therefore, their claim did not arise under the prior statute. Second, the redefining of the requirements for occupational disease claims by utilizing date of manifestation of disease rather than date of exposure is not impermissible retroactivity. Third, this redefining is a permissible restructuring of rights under Workmen's Compensation Law.

■ Even though asbestos-related diseases became compensable occupational diseases by the 1949 amendment to the Workmen's Compensation Law, plaintiffs could not have filed a claim or sued at that time if there was no indication that plaintiffs had developed a disease related to asbestos exposure or disability therefrom. A cause of action exists when the right to bring suit or when a present right to a remedy exists. 54 *C.J.S.*, Limitation of Actions § 109; 54 *C.J.S.* Limitation of Actions § 199; *Keller v. President, Directors and Company, etc.*, Del.Super., 24 A.2d 539 (1942). Damage or loss is an essential element for such claim. *Prosser and Keeton on The Law of Torts*, 5th Ed., § 30. In the case of claims for workmen's compensation

for occupational disease, the right to compensation depends upon proof that claimant was suffering from the disease resulting in disability. 19 *Del.C.* § 2304, § 2324, § 2325 and § 2326; *Alloy Surfaces Company v. Cicamore*, Del.Supr., 221 A.2d 480 (1966).

■ The underlying premise is that plaintiffs' asbestos-related disease did not manifest itself prior to 1979. Plaintiffs had no claim prior to 1979 because they had no manifestation of the asbestos-related disease. Hence, plaintiffs' claims arose after the present law became effective.

Applying the standard provided by the amendment, i.e., time of manifestation of the disease, these claims do not require retroactive application of the statute. "A statute is not made retroactive merely because it draws upon antecedent facts for its operation." *Cox v. Hart*, 260 U.S. 427, 43 S.Ct. 154, 67 L.Ed. 332 (1922); *cf. Reynolds v. United States*, 292 U.S. 443, 54 S.Ct. 800, 78 L.Ed. 1353 (1934); *Benjamin v. Hunter*, 10th Cir., 176 F.2d 269 (1949); *Alexander v. Robinson*, 5th Cir., 756 F.2d 1153 (1985); 2 *Southerland Stat. Const.* § 41.01 at 338 (4th Ed.). I conclude that the retroactivity principle which plaintiffs would have the Court apply in order to validate these claims as permissible tort claims does not apply to these claims because they arose after the 1974 amendments.

### B.

■ There are additional reasons why the principle of retroactivity does not bar workmen's compensation for these claims. Not all retroactive statutory applications are impermissible. 2 *Southerland Stat. Const.* § 41.01 at 338 (4th Ed). The question of validity of such a statute rests on "subtle judgments concerning the fairness of applying the new statute". *Id.*, § 41.05 at 364. One consideration is whether the new statute, if applied retrospectively, would interfere with, impair, or divest vested rights. *Id.*, § 41.06 at 375. Another consideration is whether that application would impair or violate obligations of contract. *Id.*, § 41.07 at 386. These

considerations may be moderated or overcome if the statute is in furtherance of the general police power for concerns of public, health, morals, safety, or general welfare. *Id.* Statutes which retrospectively make reasonable change in remedy are not impermissible. *Id.,* § 41.09 at 395; *Monacelli v. Grimes,* Del.Supr., 99 A.2d 255 (1953).

Amendments relating to occupational disease reflect a change in approach departing from the original approach which focused on exposure to the current focus on manifestation of disease. The Supreme Court recognized manifestation of disease as a permissible standard in the field of workmen's compensation in *Alloy* and this Court applied that concept in *Nutt v. A.C. & S. Co., Inc.,* Del.Super., 466 A.2d 18 (1983), *aff'd. sub nom Mergenthaler v. Asbestos Corp. of America,* Del.Supr., 480 A.2d 647 (1984).

The Supreme Court in *Champlain Cable v. Employers Mut. Liab. Ins.,* Del.Supr., 479 A.2d 835 at 841 (1984) made the following observations concerning the 1974 amendment (59 *Del.Laws* Ch. 454) relating to compensable occupational diseases:

> A literal reading of new [19 *Del.C.*] § 2301(4) results in coverage for all occupational diseases regardless of the length of time for them to develop and become manifest. The plain effect of the amendment, therefore, is to permit recovery on claims which were previously time-barred. This result is consonant with prior legislative endeavors to expand employee coverage in the area of occupational diseases and fulfills the twin purposes of the Act.

*Champlain* recognizes that the 1974 amendment applies to occupational diseases which were caused or became manifest prior to its enactment. Resolution of the issues presented in this case does not require the Court to consider whether an occupational disease which had manifested itself prior to that amendment but was not compensable under the prior law would be compensable by virtue of the 1974 amendment. The significance of this quoted language to this case is that it clearly recognizes that under the 1974 amendment, the time exposure is not a consideration and that the right to compensation is determined according to the manifestation of the disease and the employee's awareness of its relationship to working conditions. Further, it is noted that the workmen's compensation claim which gave rise to *Champlain* involved an employee whose last job-related exposure to asbestos was in 1973 (prior to the 1974 amendment) and whose workmen's compensation claim was filed in 1979 (after the 1974 amendment).

■ The employee's right to workmen's compensation benefits is not determined according to wrongdoing by the employer or lack thereof. It is determined according to the worker's disability or deterioration causally related to the work environment. 1 *Larson's Workmen's Compensation Law* § 1.10 at 1. The modern approach in applying limitations in cases involving occupational diseases is to focus upon the time of manifestation of the condition rather than the time of exposure. 1B *Larson's Workmen's Compensation Law* § 41.83(1) at 7–537.

■ Manifestation of injury or malady is an accepted determinant for claims in tort as well as in workmen's compensation. Thus, where the injury or malady lies dormant and unknowable for a period of time courts have held that that time is not chargeable against the claimant and the claim can be pursued after the injury or malady is discovered. *Stagg,* 472 A.2d at 42–43. The same concept has been applied in a variety of situations. *Isaacson, Stolper & Co. v. Artisan's Savings Bank,* Del. Supr., 330 A.2d 130 (1974); *Pioneer Nat. Title Ins. Co. v. Child, Inc.,* Del.Supr., 401 A.2d 68 (1979); *Layton v. Allen,* Del.Supr., 246 A.2d 794 (1968); and *Rudginski v. Pullella,* Del.Super., 378 A.2d 646 (1977).

■ The plaintiffs had no right to compensation for their disease and no manifestation of harm prior to the present law and the first manifestation of the disease occurred after enactment of the present law. Their claims under the present law are claims which have arisen since enactment of the present law and does not rest on retroactive application of the present law.

*Com. v. College,* Pa.Supr., 497 Pa. 71, 439 A.2d 107 (1981). Retroactivity arises when a claim or a known injury which had matured prior to the statute is sought to be substantially affected by the subsequent statute.

## C.

Traditionally, workmen's compensation has been viewed as beneficial to the workers. The Supreme Court stated that the philosophy underlying the Workmen's Compensation Law is

> to eliminate question of negligence and fault in industrial accidents, and to substitute a reasonable scale of compensation for common-law remedies, which experience had shown to be, generally speaking, inadequate to protect the interest of those who had become casualities of industry. See 1 Larson, Workmen's Compensation, § 2.20 and § 4.50. The acts were passed for the benefit of the employee, and to relieve him from the expense and hazard attending a lawsuit.

*Hill v. Moskin Stores, Inc.,* Del.Supr., 165 A.2d 447, 451 (1960), *Cf. Young v. O.A. Newton & Son Company,* Del.Super., 477 A.2d 1071 (1984). It has been repeated in substance in *Kofron,* 441 A.2d at 231; and *Champlain,* 479 A.2d at 840. *Frank C. Sparks Co. v. Huber Baking Co.,* Del. Supr., 96 A.2d 456, 461 (1953) stated:

> The philosophy of the Workmen's Compensation Law is to give an injured employee, irrespective of the merits of his cause of action, a prompt and sure means of receiving compensation and medical care without subjecting himself to the hazards and delays of a law suit.

Viewing the right to receive compensation under the Workmen's Compensation Law as beneficial rather than detrimental to employees suffering from industrial injury or disease, the Courts have looked upon amendments of those laws which expand coverage or improve benefits as beneficial to employees. Hence, uncertainties as to the intended scope of the Workmen's Compensation Law should be resolved in a way which will effectuate that objective. *New Castle County v. Goodman,* Del.Supr., 461 A.2d 1012 (1983); *Mosley v. Bank of Delaware,* Del.Supr., 372 A.2d 178 (1977).

Recognizing that a primary objective of the Workmen's Compensation Law is to assure compensation for disabled workers, such laws have been construed to extend benefits to workers to the extent the language reasonably warrants. *Price v. All American Engineering Company,* Del.Supr., 320 A.2d 336 (1974); *Alloy,* 221 A.2d at 483. It represents a legitimate exercise of a state's police power. *Price,* 320 A.2d at 339–40. This reasoning and policy supports the proposition that an amendment enlarging the class of compensable occupational diseases embodied a legislative intent to encompass all whose disease was causally related to employment.

Growing awareness of the impact of deleterious substances in the workplace upon the health of workers has motivated legislative changes to meet the problem. The number of recognized culprit substances has grown immensely. The realization that the quiescent but persistent development of some industrial diseases may delay their discovery long after exposure has also brought both legisltive and judicial changes. Legislative changes in Workmen's Compensation Laws designed to embody the modern realization in the field of occupational disease provide convincing support for the changes and for the conclusion that the legislative intent was to apply those changes expansively.

The considerations discussed above have been applied in other jurisdictions in determining whether to permit a claim for workmen's compensation involving disease exposure which occurred prior to enactment of the statute and such claims have been permitted. *Charles v. State Workmen's Compensation Com'r.,* W.Va.Supr., 161 W.Va. 285, 241 S.E.2d 816 (1978); *Frisbie v. Sunshine Mining Company,* Idaho Supr., 93 Idaho 169, 457 P.2d 408 (1969); *Tucker v. Claimants In Death of Gonzales,* Colo. App., 37 Colo.App. 252, 546 P.2d 1271 (1975); *Wood v. J.P. Stevens & Co.,* N.C. Supr., 297 N.C. 636, 256 S.E.2d 692 (1979); *Panzino v. Continental Can Company,* N.J.Supr., 71 N.J. 298, 364 A.2d 1043

(1976); *Davis v. Bath Iron Works Corporation*, Me.Supr., 338 A.2d 146 (1975); *Rogala v. John Deere Plow Co.*, N.Y.App. Div., 31 A.D.2d 867, 297 N.Y.S.2d 877 (1969). Under these cases, the date of manifestation of the disease or discovery that the disease was work-related has been accepted as a reasonable basis for determining the origin of a cause of action or claim and has been the determinant as to impermissible retroactivity. Plaintiffs cite *Moore v. Chrysler Corporation*, Del.Supr., 233 A.2d 53 (1967); *Miller v. Ellis*, Del.Super., 122 A.2d 314 (1956); and *Price*, 320 A.2d 336 (1974) in support of their retroactivity argument.

*Moore* centered on an amendment to 19 *Del.C.* § 2332 which authorized the personal representative of a deceased employee to pursue the deceased employee's compensation claim. The amendment was enacted about one year after decedent's death. The prior law provided that workmen's compensation ceased upon death which was not caused by the injury and there was no provision authorizing the personal representative to pursue a claim. *Moore* must be viewed in the light of the common law principle that personal actions based on wrongdoing abate upon the death of the person. 1 *C.J.S.*, Abatement and Revival, § 135 at 183. In the absence of statutory provision authorizing the personal representative to bring such action, the decedent's rights terminated upon his death and no rights existed in the personal representative. 100 *C.J.S.*, Workmen's Compensation, § 434 at 397. Under the law as it existed at the time of the employee's death, his compensation rights ceased and the personal representative had no right to assert the employee's rights. The personal representative at that time had no right to assert a workmen's compensation claim under the Workmen's Compensation Law where the employee's death did not result from his employment.

*Miller* involved a statutory amendment which abolished the existing statutory right of an employer or its insurer to sue a third-party wrongdoer and gave the injured employee the right to sue the third-party wrongdoer. The Court held that the employer's insurance carrier by paying compensation had acquired vested subrogation right to sue the third-party wrongdoer which should not be divested by the subsequent amendment. *Miller* does not aid plaintiffs.

In *Price* the Supreme Court held that an amendment which increased workmen's compensation benefits for claimants whose right to compensation had been established prior to the amendment did not violate constitutional standards.

Plaintiffs also cite a number of decisions from other jurisdictions which have refused to permit workmen's compensation for occupational diseases based on exposure and employment which ended before enactment of an occupational disease statute. *Walker v. Johns-Manville Products Corp.*, La. App., 311 So.2d 506 (1975) so held, without discussing the rationale on which it rested except to find that it would be giving the statute retroactive effect because employment ceased before enactment of the statute. *McClung v. National Carbon Co.*, Tenn.Supr., 190 Tenn. 202, 228 S.W.2d 488 (1950) held that the disease which was caused by exposure to asbestos prior to the occupational disease statute did not arise out of or in the course of employment, that the legislature did not intend to have the statute apply retroactively and even if that had been intended, it would violate a state constitutional provision forbidding retrospective laws. *Cropley v. Alaska Juneau Gold Mining Co.*, D.Alaska, 15 Alaska 531, 131 F.Supp. 34 (1955); *McClung*, 228 S.W. 2d 488 (1950); and *Hall v. Synalloy Corp.*, S.D.Ga., 540 F.Supp. 263 (1982), involved statutes in jurisdictions in which the right to workmen's compensation is treated as a contract right. Under the contract theory, the rights of the parties are determined by the statute in effect when the employment existed. Hence, any attempt to modify those rights after the employment ceased is viewed as interfering with contract rights and as such is barred as impermissible retroactivity. *Hall* had a further persuasive ground for denying workmen's compensation based on exposure which solely pre-dated the statute, namely, a pro-

vision in the statute specifically making it inapplicable where the test exposure occurred before the statute became effective.

The concept that workmen's compensation liability arises from a contractual relationship between employer and employee was considered and rejected by the Delaware Supreme Court in *Price. Price* held that the Delaware Workmen's Compensation Law created a "status-oriented" rather than a "contractual" ralationship under which a statute "may retroactively ... create new obligations ... provided the statute is a valid exercise of police power." *Price,* 320 A.2d at 340–41. Factors which the Court found rendered modification of workmen's compensation rights a valid exercise of police power were the spreading of employment risks through the employer's ability to pass the costs to the consuming public and the foregoing of the rights and risks of litigation in exchange for assured compensation payments.

The ultimate test in determining whether retroactivity should bar application of a statute is fairness. 2 *Sutherland Stat. Const.* § 41.05 at 364 (4th Ed.). I conclude that permitting workmen's compensation to apply to a claim which had not become manifest and could not have been asserted until after enactment of a statute which allowed such claim to be filed within a specified time after it became manifest does not violate the concepts of retroactivity and meets the test of fairness.

■ Based upon the foregoing considerations, the Court concludes that under the facts presented these plaintiffs whose first manifestation of job-related asbestos disease occurred earlier than 1979 were covered by the Workmen's Compensation Law and that such coverage is not barred as impermissibly retroactive. Accordingly, Haveg is entitled to summary judgment with respect to plaintiffs who were last employed by Haveg prior to June 15, 1949 and were not exposed to asbestos in employment thereafter.

## II

The other plaintiffs who must be considered are those who were exposed to asbestos while working for Haveg only before June 15, 1949, but who have thereafter been exposed to asbestos while working for another employer who were liable under the Workmen's Compensation Law for the asbestos-related occupational disease.

■ The issue of employer immunity from tort suit in the case of asbestos exposure which occurred during employment but manifestation of the occupational disease occurred while in employ of a subsequent employer was decided by this Court in *Lee v. A.C. & S. Co., Inc.,* Del.Super. C.A. No. 79C–DE–125, Walsh, J. (September 25, 1981) (Letter Opinion), the pertinent part of that decision being quoted in *Farrall v. Armstrong Cork Co.,* Del.Super., 457 A.2d 763 (1983) at 766–7. The decision of this Court in *Lee* was that

the immunity of a particular employer does not depend on whether [that employer] responds to a claim at any particular time, so long as an entitlement to full compensation benefits is available through the response of one or more employers in the chain of employment.

In the earlier section of this opinion, it was determined that pre–1949 employment with Haveg with no subsequent Haveg employment can render Haveg liable for workmen's compensation and, hence, bar a tort claim based on exposure to asbestos at Haveg. Since asbestos-related disease based on pre–1949 asbestos exposure is subject to the present Workmen's Compensation Law, Haveg's immunity from suit for pre–1949 asbestos exposure with respect to workmen who had post–1949 asbestos exposure while working for a different employer is governed by the decisions of this Court in *Lee* and *Farrall.*

## III

The remaining issue is the effect of this decision on the claims of the spouses of plaintiffs for loss of consortium.

■ A claim for loss of consortium is derivative to that of the injured spouse and is dependent upon the existence of a valid claim by the injured spouse for physi-

cal injury. *Farrall,* 457 A.2d at 770–71. To the extent that availability of workmen's compensation to the injured spouse bars the injured spouse from preserving a tort action for physical injuries, the spouse is also barred from recovering damages for loss of consortium resulting from those injuries. *Nutt,* 466 A.2d at 23–24.

Accordingly, the Haveg motion for summary judgment as to the spouses' claim for loss of consortium resulting from physical injury suffered by their spouses will be granted.

## IV

Based on the foregoing considerations, the legal issues raised by the briefs and discussed above must be resolved in Haveg's favor. The Court has not considered any legal or factual issues which might exist with respect to particular plaintiffs. This decision has been based upon the factual assumptions set forth above. Summary judgment in favor of Haveg will be granted upon submission of appropriate orders by Haveg.