CHAMPLAIN CABLE CORPORATION, formerly known as Haveg Industries, Inc., a corporation of the State of Delaware, Plaintiff-Appellant,

v.

EMPLOYERS MUTUAL LIABILITY INSURANCE COMPANY OF WISCONSIN, a corporation of the State of Wisconsin, Insurance Company of North America, a corporation of the Commonwealth of Pennsylvania, Liberty Mutual Insurance Company, a corporation of the State of Massachusetts, and Charles F. Mergenthaler, Defendants-Appellees.

Supreme Court of Delaware.

Submitted: Sept. 26, 1983.

Decided: May 10, 1984.

**836**

Jerold Oshinsky (argued), Sherry W. Gilbert and Robert H. Shulman of Anderson, Baker, Kill & Olick, Washington, D.C., George B. Heckler, Jr. of Heckler & Cattie, Wilmington, and Thomas R. Hunt, Wilmington, and Roxanne E. Jayne, Wilmington, of counsel, of Hercules, Inc., for plaintiff-appellant.

F. Alton Tybout (argued) of Tybout, Redfearn, Casarino & Pell, Wilmington, for defendant-appellee Employers Mut. Liability Ins. Company of Wisconsin.

Robert W. Ralston of Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, for defendant-appellee Ins. Co. of North America.

Julius Komissaroff (argued) of Komissaroff & Perry, Wilmington, Gerald V. Weigle, Jr. and John D. Luken of Dinsmore & Shohl, Cincinnati, Ohio, for defendant-appellee Liberty Mut. Ins. Co.

Thomas C. Crumplar (argued) of Jacobs & Crumplar, P.A., Wilmington, for defendant-appellee Charles F. Mergenthaler.

Before HERRMANN, C.J., McNEILLY and HORSEY, JJ.

HORSEY, Justice:

This appeal concerns an asbestos-related workmen's compensation coverage dispute between an employer-self-insurer and the employer's previous compensation insurance carriers. The question presented is when does insurance coverage attach and an insurer's liability result for employees who have contracted compensable occupational diseases from lengthy exposure to asbestos where the employee's exposure continues over the policy periods of successive compensation insurers but his illness does not become manifest until after the employer has become a self-insurer. The principal issues are whether the "last insurer" or "last carrier" rule established by this Court in *Alloy Surfaces Co. v. Cicamore*, Del.Supr., 221 A.2d 480 (1966) ("Cicamore") continues to be the law of Delaware in light of a 1974 amendment of Delaware's Workmen's Compensation Act (the "Act"), 19 *Del.C.*, ch. 23 and whether *Cicamore* should be overruled.

The employer, Champlain Cable Corporation ("Champlain"), successor to Haveg Industries, Inc. ("Haveg") and a wholly-owned subsidiary of Hercules, Inc., appeals Superior Court's grant of summary judgment for the defendant insurers. Champlain filed a declaratory judgment action against its former insurers to determine its insurance coverage rights and defendants' liability with respect to asbestos-related

workers' compensation claims under 27 consecutive insurance policies sold to Champlain by three insurance companies, Employers Mutual Liability Insurance Company of Wisconsin ("Employers"), Insurance Company of North America ("INA"), and Liberty Mutual Insurance Company ("Liberty Mutual"). The policies covered a period of 27 years from 1945 through December 1972.

The Superior Court found the 1974 amendment not to alter the rule of *Cicamore*. On the basis of this finding and the Court's conclusion that the last carrier rule of *Cicamore* continues to be viable, the Court held that the defendant carriers were without coverage liability to Champlain's present and former employees asserting claims for asbestosis which became manifest after Champlain became a self-insurer. We agree and therefore affirm.

A

The pertinent facts are these. Champlain, formerly known as Haveg, operates an industrial facility in Marshallton, Delaware. Defendant Charles Mergenthaler was employed by Haveg from approximately 1940 until he left its employ in December, 1973. Throughout his some 33 years of employment, Mergenthaler was continuously exposed to asbestos fibers contained in piping systems manufactured by Haveg. In August 1979, Mergenthaler filed a workmen's compensation claim with the Industrial Accident Board against Haveg, alleging that he was suffering from asbestosis as a result of this exposure. Champlain subsequently paid Mergenthaler all workmen's compensation benefits due under the Act. At least 17 other asbestos-related petitions have also been filed against Champlain on behalf of similarly situated employees and former employees of Haveg.[1] In each petition, asbestos-related disease is alleged to have occurred subsequent to 1973 and as a result of prior exposure to asbestos fibers in the workplace.

From 1948 until December 31, 1972, Champlain had purchased workmen's compensation coverage as follows: from defendant Liberty Mutual for 1948 until 1958; from defendant INA for 1958 until 1962; and from defendant Employers for 1963 until 1972. The standard insuring clause of each policy required the carriers to:

(a) defend any proceeding against the insured seeking such benefits [required of the insured by the workmen's compensation law] and any suit against the insured *alleging such injury, and seeking damages on account thereof,* even if such proceeding or suit is groundless, false or fraudulent; but the company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient. . . . [2]

The policies also provided for an allocation of liability in the event of multiple carrier coverage:

*Other Insurance.* If the insured has other insurance against a loss covered by this policy, the company shall not be liable to the insured hereunder for a greater proportion of such loss than the amount which would have been payable under this policy, had no such other insurance existed, bears to the sum of said amount and the amounts which would have been payable under each other policy applicable to such loss, had each such policy been the only policy so applicable.

Champlain became a self-insurer on January 1, 1973 pursuant to 19 *Del. C.* § 2372 *et seq.*

B

On September 14, 1981 Champlain instituted suit in Superior Court seeking a de-

1. Mergenthaler is the only individual defendant named in this action.

2. The above language is taken from policies submitted by Employers in response to Champlain's Request for Production. INA and Liberty claimed an inability to locate copies of their respective policies due to the long time interval involved. The Court found that the latter policies were not necessary to its determination of defendants' motion to dismiss as Liberty and INA had agreed to have their obligations to Champlain decided on the basis of the language contained in Employers' policy.

claratory judgment that defendant insurance carriers investigate, defend and indemnify Champlain for actions brought against it by Mergenthaler and his fellow claimants. The complaint alleges that since the workers' *injuries* occurred during the defendants' policy periods, each carrier is obligated for the entire claim subject to each company's right to seek contribution among the other carriers in accordance with the "other insurance" clauses of their policies.

Defendants[3] thereafter moved for dismissal under Superior Court Civil Rule 12(b)(6),[4] alleging that the Act, as construed by this Court in *Cicamore*, barred relief as a matter of law. The Superior Court found that defendants' obligations to Champlain were defined by the "last carrier" rule of *Cicamore* and that the 1974 amendment in no way impinged upon that ruling. Since the asbestos-related diseases were not manifested until after defendants' coverage had expired and Champlain had assumed the role of self-insurer, the Court held that *Cicamore* placed the entire burden of compensation on Champlain as a matter of law. Treating the motion to dismiss as one for summary judgment, the Court then granted defendants' motion and dismissed Champlain's complaint.

## II

### A

On appeal, Champlain first argues that *Cicamore* must be reassessed in view of the amendment in 1974 which eliminated from the definition of "compensable occupational diseases" the requirement that a "disability" commence within five months after a worker's last exposure to a disease-causing element. Champlain posits that two conclusions follow from the amendment: (a) that *Cicamore* was legislatively overruled (inasmuch as it was decided under a statute which defined liability for occupational diseases in terms of "disability"); and (b) that an "injury"-oriented or "exposure" test was thereafter imposed for insurer coverage in delayed-manifestation disease cases. Before examining *Cicamore*, we briefly consider the pertinent statutes and their legislative history.

The question of whether the 1974 amendment was intended to overrule *Cicamore* and require apportionment of liability among successive carriers is one of legislative intent and turns on the construction to be given 19 *Del.C.* §§ 2301(4), 2301(12) and 2304. These sections provide (in reverse order):

§ 2304. Every employer and employee, adult and minor, except as expressly excluded in this chapter, shall be bound by this chapter respectively to pay and to accept compensation for personal injury or death by accident arising out of and in the course of employment, regardless of the question of negligence and to the exclusion of all other rights and remedies.

3. Mergenthaler, though nominally aligned with the insurers, agrees with Champlain's position that Delaware's Act should be construed to regulate allocation of coverage among all insurers and self-insurers for occupational diseases resulting from exposure to toxic substances present at the workplace during the carrier's policy period. Mergenthaler claims, however, that this interpretation is consistent with *Cicamore* inasmuch as the pro-rata allocation among insurers is determined in a separate contribution proceeding and thus in no way undermines the rationale of the last insurer rule, *i.e.*, prompt and uncomplicated compensation for injured employees.

4. Superior Court Civil Rule 12(b)(6) states in part: "Every defense, in law or fact, to a claim for relief in any pleading ... shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: ... (6) failure to state a claim upon which relief can be granted.... If, on a motion asserting the defense numbered (6) ... matters outside the pleading are presented to and not excluded by the Court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 [Summary Judgment], and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."

§ 2301(12). "Injury" and "personal injury" mean violence to the physical structure of the body, such disease or infection as naturally results directly therefrom when reasonably treated and compensable occupational diseases and compensable ionizing radiation injuries arising out of and in the course of employment.

At the time of decision in *Cicamore*, "compensable occupational diseases" was defined as follows:

§ 2301(4). "Compensable occupational diseases" includes all occupational diseases arising out of and in the course of employment only when the exposure stated in connection therewith has occurred during the employment and the disability has commenced within five months after the termination of such exposure.

In 1974 the underscored language was deleted.

The legislative history of this portion of the Act[5] reveals that Delaware's Workmen's Compensation Law has followed, and continues to follow, the general evolution of occupational disease legislation. For example, at the time of its enactment in 1917, 29 Del.Laws, ch. 233 (1917), the statute defined "personal injury" as involving "violence to the physical structure of the body and such disease or infection as naturally results directly therefrom when reasonably treated...." 29 Del.Laws, ch. 233 (1917); *Revised Code of Delaware 1935*, ¶ 6114 § 44. Diseases not entailing direct physical damage to a bodily structure were not covered under the statute.

In 1937, however, the definition of "personal injury" was expanded so as to include twelve designated occupational diseases if "the exposure ... has occurred during the employment, and the disability has commenced within five months after the termination of such exposure...." 41 Del. Laws, ch. 241 (1937). The amendment specifically provided that no other occupational

disease would be compensable under the Act. By amendment in 1949, the General Assembly again broadened employee coverage by deleting all reference to the specified diseases: "[c]ompensable occupational diseases shall include all occupational diseases arising out of and in the course of employment...." 47 Del.Laws, ch. 270 (1949). The amendatory paragraph retained the five-month date-of-disability constraint. Thereafter, in 1966, this Court decided *Cicamore*.

In *Cicamore*, the claimant, an employee of Alloy Surfaces Co. ("Alloy"), suffered from gingivitis, stomatitis and dental abscesses as a result of long-term exposure to certain chrome compounds. The medical testimony revealed that claimant's condition had developed "over a period of months or years, perhaps over the total period of his employment by Alloy." 221 A.2d at 481. During the exposure period, Alloy was provided compensation coverage by several insurance carriers. At the time of disability, though, the Aetna Casualty & Surety Co. ("Aetna") was Alloy's sole insurer. Aetna's policy had been in effect for only 2½ weeks when claimant's disease was diagnosed.

The Industrial Accident Board ruled that Aetna was liable for the full amount of the claim despite the company's short time on the risk. This award was affirmed by the Superior Court. On appeal, Justice Carey framed the issue thusly:

In a case of occupational disease resulting from exposure over a lengthy period, may there be an apportionment of the loss by the Board among several insurers?

221 A.2d at 481.

Aetna argued that liability became fixed at the time of *injury* and not the date of *disability*. Its argument was premised on the theory that since the injury could not have been sustained solely in the 2½ weeks prior to claimant's hospitalization, liability

5. The history of current § 2301(4) is set forth in the appendix to this Court's decision in *Kofron*

*v. Amoco Chemicals Corp.*, Del.Supr., 441 A.2d 226 (1982).

should be apportioned among the carriers whose policies were in effect during the period of exposure.

The *Cicamore* Court rejected Aetna's "exposure" argument and instead adopted the general rule of coverage in occupational disease cases: Liability falls to the carrier who was on the risk when the disease resulted in disability, if the employment at the time of disability was of a kind contributing to the disease. *See* 4A Larson, *Workmen's Compensation Law* § 95.21 (1983). In reaching its conclusion, the Court relied on the definitional sections of the Act as well as the general notice and limitations provisions for occupational disease claims.

First addressing 19 *Del.C.* § 2301, the Court noted that the Act defined "injury" to include both violence to the physical structure of the body and compensable occupational diseases. The Act then defined "compensable occupational diseases" as those "arising out of and in the course of employment *only* when the exposure has occurred during the employment *and the disability has commenced within five months after the termination of such exposure.*" 221 A.2d at 486 (emphasis in original). By substituting the language defining occupational diseases for the term "personal injury", the Court found the time of disability to be determinative of coverage for occupational disease claims. The Court supported its finding with references to the governing notice and limitations provisions.

For instance, under 19 *Del.C.* § 2342, compensation for occupational diseases is not payable unless the employee gives notice of his infirmity within a period of six months after he first acquired knowledge of the causal connection between his injury and employment. Similarly, under 19 *Del.C.* § 2361, the limitation for occupational disease claims is one year after the employee acquires knowledge of the causal

connection or five years after cessation of exposure. From these provisions the Court found "a legislative recognition that for many purposes violence to the physical structure cannot be dealt with in the same way as occupational disease." 221 A.2d at 486. The Court observed:

> It is usually easy to prove a definite time, place and cause of injury by violence; on the other hand, while proof of place and cause of occupational disease may not be especially difficult, yet proof of time of inception is often practically impossible because the progress of such disease is gradual, being sometimes slow and sometimes swift. The present case is a good example of a situation where qualified specialists cannot trace the history of a disease with any satisfactory degree of certainty; the most they could say was that its development was a matter of months or years.

*Id.* To avoid charging the employee with such burden of proof, the Court rejected Aetna's apportionment scheme in favor of the majority rule placing the responsibility of compensation on the last insurer.[6]

■ Having reviewed the evolution of the Delaware Workmen's Compensation Act to 1974 and this Court's decision in *Cicamore*, we next consider the 1974 amendment. However, before doing so, we emphasize the two primary purposes of Delaware's Workmen's Compensation Law: to provide prompt payment of benefits without regard to fault; and to relieve employers and employees of the burden of civil litigation. *Kofron v. Amoco Chemicals Corp.*, Del.Supr., 441 A.2d 226, 231 (1982). It is evident that the last insurer rule, as embraced by this Court in *Cicamore* on an analysis of the applicable statutes was adopted to meet the ultimate aim of the Act: that compensation be swift and uninvolved. Accordingly, any change in this law should emanate from the Legislature in terms admitting of no reasonable

---

**6.** Only California and Connecticut have adopted an apportionment practice. *See Colonial Insurance Co. v. Industrial Accident Commission,* 29

Cal.2d 79, 172 P.2d 884 (1946); *Plecity v. George McLachlan Hat Co.,* 116 Conn. 216, 164 A. 707 (1933).

doubt as to the purpose. *Kofron, supra,* at 231; *Cicamore, supra,* at 487.

Prior to its amendment in 1974, § 2301(4) defined compensability for occupational diseases in the conjunctive: "... *exposure* ... has occurred during the employment *and the disability has commenced within five months after the termination of such exposure.*" In interpreting this language, this Court in *Cicamore* held that "injury" was determined as of the date of *disability.* It is Champlain's position that since "injury" is no longer statutorily limited to "disability", "injury" in asbestos cases should be construed according to the medical etiology of asbestos-induced diseases.[7] By so doing, contends Champlain, an employer may recover the full amount of a claim against any insurer on risk at any time during the injurious process. The viability of Champlain's argument hinges upon whether *Cicamore* was "overruled" by the amendment to § 2301(4).

This brings us to the 1974 amendment. In our view, the omission of the five-month after-exposure language simply eliminated the second prong of the former two-part test for compensability. A literal reading of new § 2301(4) results in coverage for all occupational diseases regardless of the length of time for them to develop and become manifest. The plain effect of the amendment, therefore, is to permit recovery on claims which were previously time-barred. This result is consonant with prior legislative endeavors to expand employee coverage in the area of occupational diseases [8] and fulfills the twin purposes of the Act. Thus, finding no explicit direction to the contrary, we perceive the intent of the amendment of § 2301(4) to be to extend coverage of workmen's compensation to all occupational diseases without regard to the date of manifestation.

In light of our conclusion, we find Champlain's argument for overruling *Cicamore* on the basis of the 1974 legislation to be without merit. Clearly, Justice Carey, writing for the Court, premised the decision upon the statutory emphasis on *disability* as the determinant of coverage for occupational diseases. This reliance continues to be well-founded, as evidenced by the notice and limitations statutes, and reflects the acknowledged distinction in injuries involving violence to the physical structure of the body and those resulting from repeated exposure to toxic materials. We are satisfied that this disability orientation was not altered by the deletion of the five-month time constraint. As previously stated, the amendment to § 2301(4) merely broadened employee coverage for continuous exposure diseases by not predicating recovery on the time of clinical diagnosis. We conclude, therefore, that "injury", in the context of occupational diseases, is still determined as of the date of "disability",

---

7. Based on the affidavit of its medical expert, Champlain submits that "injury" in asbestos cases is continuous and occurs (a) from the first inhalation of asbestos fibers ("inhalation exposure"); (b) during a period of progressive injury even after such inhalation has ceased ("exposure in residence"); and (c) until manifestation (knowledge that symptoms are present). However, in the proceedings below, counsel for defendant Mergenthaler urged that no finding be made concerning the inception date of asbestosis or asbestos-related diseases since the development of these illnesses is "far from clear." Defendant insurance carriers further argued that Champlain's medical "evidence" was irrelevant where, under the rule of *Cicamore,* it makes no difference if the occupational disease "existed under a prior employer or carrier, or had become actually apparent, or had received medical treatment...." 4A Larson, *Workmen's*

*Compensation Law* § 95.21 (1983). The Superior Court agreed and dismissed the suit as a matter of law. It is apparent that Justice Carey's insight into the problem of proving the inception of delayed-manifestation diseases has not been disproven in the 18 years since *Cicamore. See* text of Opinion at II A, *supra;* 221 A.2d at 486.

8. This conclusion is also consistent with other modifications made by the 1974 legislation. For example, § 2303 added coverage for individuals employed out of state for more than a 90-day period; § 2306 subjected employers of two or less employees to the Act's provisions; § 2309 provided coverage for state, county, and municipal employees; and § 2361 eliminated a five-year statute of limitations for occupational diseases.

*i.e.,* the date of last exposure to a disease-causing element resulting in manifestation of injury.

We also cannot agree with Champlain's argument distinguishing *Cicamore* on the basis of policy considerations. According to Champlain, application of *Cicamore* to a post-1974 occupational disease claim leaves an employer uninsured "since most, if not all, insurance companies no longer write insurance for asbestos claims." Champlain continues: If an employee's last exposure occurs during a period of self-insurance by the employer, the worker's future benefits become dependent upon the employer's economic viability. Citing recent filings in bankruptcy by several manufacturers of asbestos, Champlain concludes that the potential for massive liability in asbestos litigation mandates the abandonment of *Cicamore* for the "exposure" test expressed in *Keene Corp. v. Insurance Company of North America,* D.C.Cir., 667 F.2d 1034 (1981), *cert. denied,* 455 U.S. 1007, 102 S.Ct. 1644, 71 L.Ed.2d 875 (1982).[9]

The response to this argument was well-stated by the Court below:

> [The] last carrier rule cannot be avoided simply because an employer has opted to assume the role of a last carrier through self-insurance. Moreover, each of the carriers on the risk during the respective years of coverage provided full workmen's compensation coverage, as the Act requires, and each would have been required to respond to any claim for occupational disease which manifested itself while such coverage was in effect.

We are also persuaded that the lack of unequivocal legislative response against *Cicamore* indicates a public policy favoring the administrative simplicity inherent in the last carrier rule.

**B**

Finally, Champlain argues that the motion to dismiss was premature for it precluded discovery of defendants' insurance policies during the various periods of coverage. Champlain maintains that production was necessary since at least one defendant, Liberty, had conceded that its policies could grant coverage broader than that mandated by statute. Champlain relies on the language of the carriers' standard insuring clause which predicated the defendants' duty to defend and pay on the allegation of "injury", and not "manifested injury." (*See* I A *supra* for policy language.) Defendants respond that the question of liability is controlled by *Cicamore* as a matter of law and thus should be decided without reference to the issued policies.

We find no reversible error in Superior Court's dismissal of Champlain's complaint on the record presented. Delaware's Workmen's Compensation Act requires an employer to carry compensation liability insurance or to qualify as a self-insurer. 19 *Del.C.* § 2377. Indeed, all worker's compensation policies must conform to State law. 19 *Del.C.* § 2379; *DiStefano v. Lamborn,* Del.Super., 84 A.2d 413 (1951), *aff'd sub nom., Frank C. Sparks Co. v. Huber Baking Co.,* Del.Super., 96 A.2d 456 (1953). Moreover, as this Court stated in *Price v.*

---

**9.** Defendants respond that the *Keene* rationale is inapplicable to a workmen's compensation case since *Keene* presented a question of products liability coverage. Indeed, the *Keene* Court recognized this distinction: "Workmen's compensation cases are only minimally instructive in construing comprehensive general liability policies." 667 F.2d at 1043, n. 17. And, in *Insurance Company of North America v. Forty-Eight Insulations, Inc.,* E.D.Mich., 451 F.Supp. 1230 (1978), *aff'd,* 6th Cir., 633 F.2d 1212 (1980), *aff'd on reh'g,* 657 F.2d 814 (1981), *cert. denied,* 454 U.S. 1109, 102 S.Ct. 686, 70 L.Ed.2d 650 (1981), the District Court acknowledged that worker's compensation cases generally adhere to a "manifestation" theory and are clearly distinguishable from product liability insurance cases. 451 F.Supp. at 1241.

Defendants also hotly contest the "equitable attraction" of an apportionment scheme. Arguing that such a practice would in fact present a "nightmare" in application, defendants say it would be "equitable" to neither the employer nor the injured employee. Defendants pose various hypotheticals to demonstrate the unworkability of a simple proration of coverage among carriers/employers that does not consider degree as well as time of exposure to asbestos.

*All American Engineering Co.*, Del.Supr., 320 A.2d 336 (1974), the mandatory nature of the Act creates a statutory rather than a contractual relationship between insurers and insured employers. Hence, any question of liability pertaining to this relationship must be decided under the Act as interpreted by the courts of this State.

Champlain claims, however, that the defendant carriers' policies granted coverage broader than that prescribed by Delaware's Act. The defendant insurers argue to the contrary that their insurance policy provisions do not provide coverage broader than that permitted by law. We find their position to be persuasive. The "duty to defend" policy language upon which Champlain relies premises liability on the allegation of "injury." Section 2304 of Title 19 of the Delaware Code provides for the payment of compensation *only* in the event of "personal *injury* or death by accident arising out of and in the course of employment." Champlain's contention that "injury" in defendants' policies means inhalation of asbestos rather than manifestation of disease is but another attempt to define "injury" in asbestos cases in accordance with disputed medical evidence. (*See* footnote 7, *supra.*) We rejected this argument in Section II A. We are also not persuaded that the "Other Insurance" clauses of defendants' policies grant more extensive coverage than that provided by the Act.

\*　　\*　　\*

Affirmed.