**Susan MURTHA, Employee Below, Appellant,**

v.

**CONTINENTAL OPTICIANS, INC., Employer Below, Appellee.**

No. 96A–02–012–HLA.

Superior Court of Delaware, New Castle County.

Submitted: April 23, 1997.
Decided: July 23, 1997.
Corrected: August 14, 1997.

cannot alone serve as a basis for personal jurisdiction over the nonresident for actions arising out of the contract.").

Harvey Bernard Rubenstein, Wilmington, DE, for appellant.

Dennis J. Menton, Heckler & Cattie, Wilmington, DE, for appellee.

## OPINION

ALFORD, J.

This is the Court's decision on Appellant's petition for an award of an attorney's fee for legal services rendered on appeal from a decision of the Industrial Accident Board ("Board"). For the following reasons, the Court denies the petition for an attorney's fee.

## BACKGROUND

Susan L. Murtha, Employee below—Appellant ("Employee" or "Claimant"), has petitioned the Court for an award of an attorney's fee pursuant to 19 *Del.C.* § 2350(f) in connection with her appeal of a Board decision awarding her disfigurement benefits. Employee suffered a knee injury when she was struck by a car while on an errand for her employer, Continental Opticians, Inc. ("Employer"). Employee's injury required surgery that resulted in two scars that caused serious and permanent disfigurement to her knee. The knee injury also resulted in a ten percent permanent loss of use to the left leg. In November 1995, Employee petitioned the Board for compensation for the disfigurement pursuant to 19 *Del.C.* § 2326(f).[1] A

---

1. Section 2326(f) allows the Board to award compensation for certain permanent injuries. The section provides two alternative methods for determining the appropriate compensation. The first calculation is for injuries that result in disfigurement only. The second calculation accounts for both disfigurement and the permanent loss of use to the injured body part, commonly referred to as permanency. If the injury involves both disfigurement and loss of use, the statute requires calculations by two separate methods and an award in the higher amount. *See Bagley v. Phoenix Steel Corp.*, Del.Supr., 369 A.2d 1081 (1977). The section reads:

   The Board shall award proper and equitable compensation for serious and permanent disfigurement to any part of the human body up to 150 weeks, provided that such disfigurement is visible and offensive when the body is

hearing was held before the Board on March 22, 1996. The Board observed the surgical scars and heard testimony from Ms. Murtha regarding how the scar has physically and psychologically affected her.

During the hearing, Claimant's attorney discussed factors the Board should consider when determining the appropriate level of compensation. He focused on Employee's age, life expectancy, gender and compensation rate. He discussed the disfigurement only scale and stated that the Board has "anywhere from zero to 150 weeks to award here. That is the scale on which you must adopt a number to award in this case." He proposed that considering disfigurement alone, proper and equitable compensation would be seventy-five weeks. Claimant's attorney did not discuss the disfigurement plus loss of use scale and the two computation methods applicable to compensable injuries that include both loss of use and disfigurement.

In his summation, Employer's attorney discussed both compensation scales and the two computations required under the disfigurement plus loss of use scale according to 19 *Del.C.* § 2326(f). He also informed the Board that it must discuss with specificity the basis of the award and the criteria used to determine the level of compensation. He explained that if the ten percent permanency was considered in addition to the disfigurement, the appropriate compensation amount would be thirty weeks. He argued that thirty weeks would be an appropriate level of compensation under either scale. Without specifically discussing the factors on which it

relied, the Board awarded Employee thirty weeks of compensation at the rate of $113.10 equaling $3,393.00.[2]

Employee appealed the Board's decision on three grounds: 1) the Board committed legal error by failing to make the requisite computations as required by the statute; 2) the Board failed to consider all relevant factors; and 3) the Board's award was not supported by substantial evidence. Without commenting on the sufficiency of the thirty weeks compensation amount, the Court found that the Board failed to address and apply the two calculation methods as mandated by *Bagley v. Phoenix Steel Corp.*, Del.Supr., 369 A.2d 1081 (1977) and *Bordley v. Mid–Del Employment*, Del.Super., C.A. No. 94A–06–002, Terry, J., 1995 WL 109030 (February 13, 1995).[3] The Court also instructed the Board to explicitly state the facts upon which its decision was based.[4] Accordingly, the case was remanded to the Board to compute the disfigurement award as mandated by *Bagley* and *Bordley* and to specify the factors underlying the award.[5]

Before the Court is Claimant's Petition for an Award an Attorney's Fee pursuant to 19 *Del.C.* § 2350(f). Claimant's attorney requests $8,000 for twenty-five hours he expended on the Superior Court appeal based on an hourly rate of $320 and an additional $3,200 for ten hours of time he spent preparing the Petition for an Award of an Attorney's Fee based on a $320 hourly rate.

On December 5, 1996, while Claimant's Petition for an Award of an Attorney's Fee was pending before the Court, the Board

clothed normally, which shall be paid to the employee at the rate of 66⅔ percent of wages. In the event that the nature of the injury causes both disfigurement to and loss or loss of use of the same part of the human body, the maximum compensation payable under this subsection for that part of the body shall be the higher of either (1) the amount of compensation found to be due for disfigurement without regard to compensation for loss of or loss of use, or (2) the amount of compensation due for loss of or loss of use plus 20% thereof for disfigurement.

19 *Del.C.* § 2326.

2. Bd. dec. of Jan. 4, 1996.

3. *Murtha v. Continental Opticians, Inc.*, Del.Super., C.A. No. 96A–02–012, Alford, J. (Aug. 27, 1996) (Mem.Op).

4. *Id.*

5. *Id.*

issued its decision on remand.[6] According to the dictates of the Superior Court Order remanding the case, the Board issued its decision under the strictures of *Bagley* and *Bordley* and identified the factors supporting the award.[7] The Board re-affirmed its conclusion made on January 4, 1996 and awarded claimant compensation for thirty weeks.[8] On January 23, 1997, Employer filed a notice of appeal with this Court from the Board's November 15, 1996 decision. The appeal on the merits is currently pending before the Superior Court.

On February 7, 1997, the Court informed the parties that the action would be held in abeyance pending the Delaware Supreme Court's decision in the case of *Pollard v. Placers, Inc.*[9] The Supreme Court issued its decision involving the application of § 2350(f) on March 21, 1997. The Court dismissed the appeal finding that the Superior Court's decision involving the award of an attorney's fee was an interlocutory order and not ripe for appeal until the underlying issue was resolved.[10] Claimant filed a motion for reargument and this was denied by the Supreme Court on April 22, 1997. Claimant filed another

notice of appeal on April 29, 1997 explaining that the parties settled the underlying dispute and claiming that therefore the fee award was ripe for appeal. The Supreme Court dismissed this appeal finding that the Superior Court never issued a final order regarding the underlying dispute.[11] Accordingly, the Court held that the fee award continues to be an interlocutory order which requires resolution of the underlying cause before the attorney fee award becomes part of a final appealable judgment.[12] · With this background, the Court now turns to the issue before it.

## DISCUSSION

The Superior Court has discretion to award an attorney's fee in an appeal from the Board to the Superior Court.[13] This discretion is statutorily limited to situations "where the claimant's position in the hearing before the Board is affirmed on appeal."[14] Thus, for this Court to exercise its discretion it must first be determined whether the remand *sub judice* constituted an affirmance on appeal of the claimant's position before the Board as contemplated by § 2350(f).

6. *See* Bd. Dec. of Nov. 15, 1996.

7. Bd. Dec. of Nov. 15, 1996.

8. Bd. Dec. of Nov. 15, 1996 at 8.

9. In the *Pollard* case, the claimant filed an appeal on the merits from the Board's decision. The Superior Court reversed and remanded the case based on two of the three arguments posited by the claimant. *See Pollard v. Placers, Inc.*, Del.Super., C.A. No. 95A–09–021, Cooch, J., 1996 WL 527307 (May 20, 1996) (Mem.Op.). Subsequently, the claimant petitioned the Superior Court for an award of an attorney's fee pursuant to 19 *Del.C.* § 2350(f) asserting that the remand constituted "success on appeal." Since the Superior Court rejected the claimant's third basis for appeal, the Court awarded an attorney's fee based on two-thirds of the requested amount. *See Pollard v. Placers, Inc.*, Del.Super., C.A. No. 95A–09–021, Cooch, J., 1996 WL 527211 (Aug. 9, 1996) (Mem.Op.). The claimant appealed the Court's decision awarding the attorney's fee arguing that the Court erred as a matter of law in reducing the fee application by one-third. *See Pollard v.*

*Placers, Inc.*, Del.Supr., 692 A.2d 879 (1997). After argument before a three justice panel, the Delaware Supreme Court ordered the matter to be resubmitted before the Court *en banc*. *See id.* Since the *Pollard* case involved the proper application of § 2350 with a Board decision that was remanded and since both parties relied on the case as precedent, the Court informed the parties by letter memoranda that any decision regarding the proper award of an attorney's fee would be held in abeyance until the Supreme Court issued its decision.

10. *Pollard v. Placers, Inc.*, Del.Supr., 692 A.2d 879 (1997).

11. *Pollard v. Placers, Inc.*, Del.Supr., No. 181, 1997, Walsh, J., 1997 WL 328590 (May 21, 1997).

12. *Id.*

13. *See* 19 *Del.C.* § 2350(f).

14. 19 *Del.C.* § 2350(f).

Employer asserts that Employee's position before the Board was not affirmed on appeal. Employer contends that at the hearing, Employee's position was that seventy-five weeks of disfigurement benefits should be awarded based on the 0 – 150 week, disfigurement only scale.[15] Employer states that Claimant's attorney was the attorney of record in other disfigurement cases and his failure to discuss an award under the disfigurement plus permanency scale forecloses Employee's argument on appeal that the alternative scale should have been considered and discussed in the Board's decision.[16] Employer argues that "[i]f [Claimant's attorney] was so interested in having the Board compute the analysis pursuant to the permanency claim and if [Claimant's attorney] wanted the Board to express the factors upon which it relied pursuant to the *Conway* holding, the time to make that request is at the hearing and not on appeal."

Employee contends that the word "position" in § 2350(f) is a term of art and does not refer to precise language used before the Board but to the overall success of the claimant's appeal.[17] Employee urges that every conceivable Board error cannot be foreseen; nor is it possible for Employee to take a position on every conceivable Board error at the hearing to preserve a right to earn attorney fees on appeal. Employee asserts that the thirty weeks award was an arbitrary choice that would likely be increased by the Board on remand and urges that this Court's remand constituted a successful appeal.

## Statutory History and Legislative Intent of § 2350(f)

On June 25, 1959, the Delaware General Assembly enacted the provision allowing for an attorney's fee for services on an appeal from a Board decision.[18] The provision allowed a reasonable attorney's fee "where the claimant has prevailed in his hearing before the Industrial Accident Board and is affirmed on appeal...."[19] Under this version of the statute, in order for a claimant to be eligible for an attorney's fee, the claimant must have prevailed before the Board and then successfully defended against an appeal from an employer before the Superior Court or the Supreme Court.[20] The purpose of the statute was threefold. First, it protected a claimant from having his wholly intact, Board awarded recovery depleted by attorney's fees that were generated by defending the award at the appellate level against the unsuccessful employer.[21] Additionally, the statute encouraged employers to pay the award ordered by the Board and also dissuaded employers from pursuing meritless appeals.[22]

In the case *Digiacomo v. Board of Public Educ. in Wilmington,* the Delaware Supreme Court recognized that under the statutory scheme, "[t]he touchstone for an award of counsel fees on appeal is success."[23] In its opinion, the Supreme Court reversed the Superior Court's award of an attorney's fee that was based on an issue formula where the amount awarded was determined by the number of hours spent only on issues that affected the outcome of the award.[24] In rejecting the issue

15. *See* 19 *Del.C.* § 2326(f) (first sentence).

16. *See* 19 *Del.C.* § 2326(f) (second sentence).

17. *See Digiacomo v. Board of Public Educ. in Wilmington,* Del.Supr., 507 A.2d 542, 546 (1986) (stating that the "touchstone for an award of counsel fees on appeal is success").

18. 52 *Del. Laws* 101, § 2350(f) (1959).

19. *Id.*

20. *See Aetna Casualty & Surety Co. v. Rodriguez,* Del.Supr., 399 A.2d 1289 (1979).

21. *Mooney v. Benson Management Co.,* Del. Supr., No. 225, 1984, McNeilly, J., 497 A.2d 789 (Jan. 24, 1985) (ORDER).

22. *Id.*

23. *Digiacomo,* 507 A.2d at 546.

24. 507 A.2d at 546.

allocation approach, the Supreme Court recognized that the employer-appellant framed the appellate issues and the appellee-employee was obligated to defend against all of the issues raised in order to sustain the Board's favorable ruling.[25] As the Supreme Court explained in *Digiacomo*, the claimant-appellee had no control over the appellate issues and was captive to the Board's holding in defending against the appeal.[26] Accordingly, under the pre-amended version of § 2350(f), the touchstone for an award of counsel fees evolved into determining whether the claimant was successful in defending the award.

The Delaware General Assembly amended § 2350(f) effective with appeals filed after May 10, 1994.[27] The new provision allows a reasonable attorney's fee "where the claimant's position in the hearing before the Board is affirmed on appeal." Unlike the rule under the pre-amended provision, a claimant may now initiate an appeal of an unfavorable Board decision and if successful, may petition the Court for an attorney's fee. The clear legislative intent of the amendment is to create a right for a claimant to seek an attorney's fee for the time expended at the appellate level when a claimant appeals an unfavorable or erroneous Board decision and claimant's position before the Board is affirmed on appeal.[28] What is less clear is what constitutes an affirmance of the claimant's position before the Board.

**Principles of Statutory Construction**

The question of what constitutes an affirmance of the claimant's position before the Board under the amended version of § 2350(f) appears to be a novel issue.[29] When confronted with a novel question of statutory construction, this Court "must seek to ascertain and give effect to the intention of the Legislature as expressed in the Statute itself."[30] When

---

**25.** The Court did note, however, that an issue allocation approach may be appropriate in measuring compensability in other cases. *Digiacomo*, 507 A.2d at 546. An issue allocation approach was used in *Pollard v. Placers, Inc.*, Del.Super., C.A. No. 95A–09–021, Cooch, J., 1996 WL 527211 (Aug. 9, 1996).

**26.** 507 A.2d at 546.

**27.** 69 *Del.Laws* 218, § 2350(f) (1994) (as amended).

**28.** *See Bedwell v. Brandywine Carpet Cleaners*, Del.Super., C.A. No. 95A–12–001, Barron, J., 1996 WL 658839 (Sept. 30, 1996) (ORDER). The legislative synopsis of the amendment discusses the purpose of the change:

Current law requires insurance companies to pay worker's compensation claimant's attorney fees before the Industrial Accident Board and on appeal when the claimant is awarded compensation benefits. Sometimes the Industrial Accident Board, through no fault of the claimant, commits an error and fails to award benefits to the claimant. When this occurs, an appeal is necessary and because of the current law a claimant can recover attorney's fees for the appellate work performed by his attorney only where he wins before the Board and wins on appeal. This situation is unfair to claimants. It was the intention of the original legislation that claimant's awards not be depleted by attorney's fees whenever the claimant receives such an award. This bill corrects the oversight in the present law. Sen. Bill No. 122, 137th Leg. (Del.1993) (legislative synopsis).

**29.** The Superior Court has awarded attorneys' fees under the amended version of § 2350(f). However, the precise issue of what constitutes an affirmance of the claimant's position before the Board has not been specifically discussed. *See Bedwell v. Brandywine Carpet Cleaners*, Del.Super., C.A. No. 95A–12–001, Barron, J., 1996 WL 658839 (Sept. 30, 1996) (ORDER) (recognizing that the amended version § 2350 now allows an attorney's fee when the claimant appeals an unfavorable Board decision); *Pollard v. Placers*, Del.Super., C.A. No. 95A–09–021, Cooch, J., 1996 WL 527211 (Aug. 9, 1996) (Mem.Op.) (awarding an attorney's fee for claimant's appeal of a Board decision where two of the three positions claimant argued before the Board were affirmed on appeal); *State v. Cornish*, Del.Super., C.A. Nos. 94A–05–002, 95A–01–015, Gebelein, J., 1995 WL 862127 (Aug. 15, 1995) (ORDER) (determining the appropriate fee award where employer initiated a successful appeal but employee ultimately prevailed on the second appeal).

**30.** *General Motors Corp. v. Burgess*, Del.Supr., 545 A.2d 1186 (1988) (quoting *Kofron v. Amoco Chemicals Corp.*, Del.Supr., 441 A.2d 226, 230 (1982)).

interpreting the language of the statute, nontechnical

> Words and phrases shall be read with their context and shall be construed according to the common and approved usage of the English language. Technical words and phrases, and such others as may have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to such peculiar and appropriate meaning.[31]

This Court must also recognize that the Legislature:

> [I]nserted every provision for some useful purpose and construction.... Similarly, where a provision is expressly included in one section of a statute, but is omitted from another, it is reasonable to assume that the Legislature was aware of the omission and intended it. The Courts may not engraft upon a statute language which has been clearly excluded therefrom by the Legislature. When ambiguity exists in a statute, there is judicial discretion to construe it according to general standards of statutory interpretation and construction. But where no ambiguity exists, and the intent is clear from the language of the Statute, there is no room for statutory interpretation or construction.[32]

■ Based on the rules of statutory construction, the Court must reject the Employee's contention that the word "position" was used in the statute only as a term of art and the real touchstone continues to be success. This interpretation would render the new language meaningless and this Court must assume that the Legislature intended for every provision to have meaning.[33] Additionally, courts "may not engraft upon a statute language which has been clearly excluded therefrom by

the Legislature."[34] If the Legislature intended that success be the only requirement for a claimant to receive an attorney's fee, it must be assumed that the Legislature would have drafted those terms into the statutory language.

### Attorney's Fee under § 2350(f)

This Court recognizes that under the amended version of § 2350(f), the Legislature intended that while the success of the appeal continues to be an important factor, in cases where the claimant is the appellant, the claimant must have pursued the specific position they are arguing on appeal at the Board proceeding. This is evident for many reasons.

■ First, under the current statutory scheme, the employee may appeal an unfavorable Board ruling and has control in forming the appellate issues. The justification of focusing solely on the success of defending the appeal is weakened by the change in the statute that allows the claimant to bring the appeal. No longer is the claimant "the captive of the Board's ruling" and limited to defending against issues raised by the employer. Since a claimant may now frame the appellate issues, it is axiomatic that claimant raise issues before the Board before presenting the issues at the appellate level. It is well established that it is the function of the Board to hear and weigh the evidence.[35] The Superior Court reviews Board decisions on the record to determine if they are supported by substantial evidence; the Court does not sit as trier of fact.[36] It is essential to the appellate process that claimants thoroughly present their case before the Board including discussing all relevant evidence and positing all legal arguments.

---

**31.** 1 *Del.C.* § 303.

**32.** *Burgess*, 545 A.2d at 1191 (citations omitted).

**33.** *Id.*

**34.** *Giuricich v. Emtrol Corp.*, 449 A.2d at 238.

**35.** *See* 19 *Del.C.* §§ 2345, 2348. *See also Fiorucci v. C.F. Braun & Co.*, Del.Super., 173 A.2d 635 (1961).

**36.** *See* 19 *Del.C.* § 2350. *See also Johnson v. Chrysler Corp.*, Del.Supr., 213 A.2d 64 (1965).

Second, limiting the right to seek an attorney's fee to those situations where the claimant's "position before the Board" is affirmed on appeal furthers the two primary purposes of the Act: "to provide prompt payment of benefits without regard to fault; and to relieve employers and employees of the burden of civil litigation ." [37] The requirement encourages claimants to present all reasonable arguments before the Board and limits the potential of claimants appealing unfavorable rulings based on arguments that were not considered by the Board nor supportable with evidence. Courts should not reward obstinacy and claimants should be discouraged from pursuing meritless appeals.[38] The Act was designed to discourage litigation and provide prompt payment. While appeals will be inevitable, the pursuit of attorney fees should not become the focus of the litigation.[39]

Clearly, in the instant case, Employee does not qualify for legal fees because Employee's position before the Board was not affirmed on appeal. At the hearing, Employee discussed the first sentence of § 2326(f) only and argued that proper and equitable compensation, based on the 0–150 week scale would be a seventy-five weeks award. The primary factors the Employee asked the Board to consider were her low compensation rate, gender, age and life expectancy, although none of these are factors the Board is required to consider under the statute or applicable case law.[40]

Employer, however, informed the Board that they must consider the factors discussed in *Colonial Chevrolet, Inc. v. Conway*, Del.Super., No. 79A–Fe–13, Longobardi, J. (April 28, 1980) (ORDER), and discuss the criteria in a detailed manner in its decision. Additionally, Employer discussed the alternative calculations that are required under § 2326(f) and *Bagley*, and explained the calculations to the Board. Employer suggested that thirty weeks would be the appropriate compensation under the second sentence of § 2326(f) but that the Board had discretion to base the award on a 0–150 scale since the claim was essentially a disfigurement only claim.

On appeal, Employee argued that the Board failed to make the necessary computations as required by § 2326(f); the Board failed to consider all relevant factors; and the Board's award was inadequate and not supported by substantial evidence. The Court did not comment on the adequacy of the amount of the award but remanded the decision to the Board for clarification regarding the basis of the award.[41] The Court instructed the Board to compute the award according to the dictates of § 2326(f) and applicable case law and also to indicate the factors it relied on in making the award, as required by *Conway*.[42]

■ The remand of the case to the Board cannot be viewed as an affirmance of Employee's position before the Board.[43]

---

37. *Champlain Cable v. Employers Mut. Liab. Ins.*, Del.Supr., 479 A.2d 835, 840 (1984) (citing *Kofron v. Amoco Chemicals Corp.*, Del. Supr., 441 A.2d 226, 231 (1982)).

38. *See Digiacomo*, 507 A.2d at 547.

39. *Id.*

40. *See Pollard v. Placers, Inc.*, Del.Super., C.A. No. 95A–09–021, Cooch, J., 1996 WL 527211 (Aug. 9,1996) (Mem.Op.); *Conner v. Wells Fargo*, Del.Super., C.A. No. 92A–11–006, Goldstein, J., 1994 WL 682486 (Oct. 4, 1994) (ORDER).

41. *Murtha*, C.A. No. 96A–02–012, Mem.Op. at 6.

42. *Murtha*, C.A. No. 96A–02–012, Mem.Op. at 5.

43. Employee's reliance on *Pollard* to support the argument that a remand to the Board *per se* constitutes a successful appeal is misplaced. In *Pollard*, the Superior Court, in its discretion, awarded an attorney's fee to a claimant for the claimant's appeal of a Board decision that the court reversed and remanded. *Pollard*, C.A. No. 95A–09–021, Cooch, J. (Aug. 9, 1996), Mem.Op. at 5. The court noted that immediate pecuniary gain is not a prerequisite to an award of an attorney's fee in a worker's compensation case. *Id.* However, the court did not summarily award an attorney's fee but looked at the particular facts of

Employee's position before the Board was that seventy-five weeks should be awarded based on the 0–150 week scale. Employee did not discuss the alternative loss of use scale nor take a position on its applicability. Employee did not discuss the factors that should be analyzed by the Board as required by *Conway*, but encouraged the Board to consider factors that are not required to be considered by the statute or applicable case law. In fact, this Court actually affirmed Employer's position before the Board. Employer argued that the *Conway* factors must be considered and discussed and outlined the calculations as required under both scales pursuant to § 2326(f).

Additionally, the only appellate issue that Employee reasonably could argue was "claimant's position in the hearing before the Board" was the argument that the award was inadequate. Employee asked for seventy-five weeks but the Board awarded only thirty weeks. However, this Court did not reverse the amount of the award or comment on its adequacy, but remanded the Board decision for clarification. Perhaps if the Board, on its remand, awarded greater compensation and found that its previous award was not based on substantial evidence, then Employee could claim success on that aspect of the appeal. But prior to the Board's decision upon remand, it would be premature to award an attorney's fee before ascertaining

whether the award was increased.[44] Accordingly, the Court finds that, in the case *sub judice*, the remand from the Superior Court to the Board did not constitute an "affirmance on appeal" as contemplated by § 2350(f). Claimant should have waited until after the Board issued its decision on remand to file a fee application, and then only if Claimant could claim some additional benefit arising from the remand.

This approach comports with express language of § 2350(f) which states "[s]uch fee shall be taxed in the costs and become a part of the final judgment in the cause . . . ." Arguably, the statute contemplates that fee applications and awards await resolution of the underlying issue. Until there is a final judgment in the case, a fee award would be premature. As the Delaware Supreme Court recently noted "Superior Court orders of remand directed to decisions of administrative agencies, including the Industrial Accident Board, except remands for purely. ministerial functions, are interlocutory, not final, orders."[45] Thus, an application for an award of an attorney's fee should not be filed simply because the Court remanded a case to the Board. Waiting until the litigation of the underlying matter is completed will circumvent the possibility that attorney fee applications will become the focus of appeals from Board rulings and avoid the fragmentation of litigation.[46]

---

the case and weighed the benefit to the employee. *Id.* The facts in *Pollard* can be distinguished from the facts of the case *sub judice* and the equities of the case are significantly different. In *Pollard*, the Employer "simply asked the Board to view the scar and to make an appropriate award." *Pollard v. Placers,* C.A. No. 95A–09–021, Cooch, J., 1996 WL 527307 (May 20, 1996) (Mem.Op.). Here, the Employer discussed the appropriate precedent with the Board and informed the Board that the statute requires two computations and its decision must specifically discuss the *Conway* criteria. The *Pollard* Court also recognized that it was possible that the employee's award could be increased eleven-fold. *Pollard,* (Aug. 9, 1996), Mem.Op. at 7. This Court made no comment on the possible benefits of the remand but instructed the Board to make the required calculations and to indi-

cate the factors upon which it relied in making the award. *Murtha,* C.A. No. 96A–02–012, order at 5.

44. As noted earlier, while the issue was pending before this Court, the Board issued its decision upon remand. *See* Bd. Dec. dated Dec. 12, 1996. After careful review of the transcript and the evidence presented at the hearing, the Board re-affirmed its conclusion and awarded the Employee thirty weeks based on a scale of 0–150 weeks. Bd.Dec. at 7.

45. *Pollard,* 692 A.2d at 879.

46. This case, as well as the *Pollard* case, serve as examples of fragmentation of litigation and fee applications becoming the focus of a

For the foregoing reasons, Employee's Petition for an Award Attorney's Fee is hereby **DENIED.**

**IT IS SO ORDERED.**

worker's compensation case. In *Pollard*, the Board awarded claimant $685.25. On appeal to the Superior Court, the Court reversed and remanded the case to the Board finding that the Board failed to make necessary computations and did not support its decision with substantial evidence. Claimant's attorney filed an application for attorney's fees requesting $16,160. While the parties resolved and settled the merits of Pollard's entitlement to disfigurement benefits on April 28, 1997, the application for attorney's fees has been considered on four separate occasions and remained unresolved as of May 21, 1997. Similarly, in the case *sub judice*, the Board awarded Claimant $3,393. On Claimant's appeal, the Court remanded the case to the Board for clarification. The Board awarded the same amount on remand. Based on the remand, Claimant's attorney submitted an application for attorney's fees requesting over $11,000. Claimant has appealed the Board's decision on remand and the underlying dispute continues to be unresolved. This one case has developed into two separate lines of litigation: one involving attorney fees and one involving the merits of the disfigurement claim. *See also Wilmington Board of Public Educ. v. Digiacomo*, 522 A.2d 347 (1987) (discussing the seventh stage of litigation in that case and the danger of allowing fee applications to become the focus of appeals).