**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

RICHARD QUAILE, )
          )
   Claimant-Below/Appellant, )
          )
   v. )    C.A. No. N21A-12-003 JRJ
          )
NATIONAL TIRE AND BATTERY, )
          )
   Employee-Below/Appellee. )
          )

Submitted: April 28, 2022
Decided: July 7, 2022

**MEMORANDUM OPINION**

*Upon Claimant's Appeal from Decision on Remand of the Industrial Accident Board –* **REVERSED**

Adam F. Wasserman, Esquire, of CICONTE WASSERMAN & SCERBA, LLC, 1300 North King Street, Wilmington, Delaware 19801, Attorney for Claimant-Below/Appellant.

Keri L. Morris-Johnston, Esquire, of MARSHALL DENNEHEY WARNER COLEMAN & GOGGIN, 1007 North Orange Street, Suite 600, P.O. Box 8888, Wilmington, Delaware 19899, Attorney for Employer-Below/Appellee.

Jurden, P.J.

This is an appeal from a decision of the Industrial Accident Board denying Claimant's petition for additional compensation for medical expenses incurred following a work injury. After considering the parties' briefs, the relevant evidence in the record and the Board's findings of fact and conclusions of law, the Court concludes the Board's decision must be **REVERSED.**

## I.  FACTUAL & PROCEDURAL BACKGROUND

On August 31, 2015, Richard Quaile ("Claimant") sustained work-related injuries after falling from a ladder (the "2015 work accident").[1] TBC Corporation, a/k/a National Tire and Battery ("Employer") denied those injury claims on September 30, 2015 and terminated Claimant's employment.[2] On October 20, 2015, Claimant filed a Petition to Determine Compensation Due (the "First Petition"), which sought acknowledgment of the injuries he sustained to his right foot and ankle, right leg and lumbar spine.[3]  After communicating with Claimant's counsel, Employer agreed to acknowledge Claimant's right foot and ankle injuries, and the two parties entered into an open Agreement for the payment of temporary total

---

[1] Video evidence of Claimant's fall, which occurred during work hours, is documented. Claimant-Below/Appellant's Op. Br. on Appeal (hereinafter "Cl.'s Appeal") at 1, n.1.  Claimant fell off a ladder and, according to Claimant, suffered immediate injuries to his right foot, right knee and lumbar spine. Cl.'s Appeal. at 1.

[2] *Id.*; The Industrial Accident Board of the State of Delaware's Decision on Remand (hereinafter "Bd.'s Dec.") at 2.  Claimant's termination caused him to lose the private health insurance coverage he received through Employer. Bd.'s Dec. at 2.

[3] Cl.'s Appeal at 1.

disability on January 29, 2016.[4]   However, Employer refused to compensate Claimant pursuant to the other injury claims involving Claimant's right knee and lumbar spine; Claimant subsequently withdrew his First Petition.[5]

After Claimant's employment had been terminated, he used his spouse's private health insurance (the "private health insurance") to pay for the medical expenses he incurred related to the injuries Employer refused to acknowledge.[6] Claimant underwent multiple surgeries in June and October of 2016.[7]   On July 14, 2016, Employer filed a Termination Petition alleging Claimant was able to work.[8] On August 9, 2016, Claimant filed a Petition to Determine Additional Compensation Due (the "Second Petition"), seeking acknowledgement of the injuries and surgeries related to his right knee and lumbar spine.[9]   The Second Petition and the Termination Petition were consolidated, and the Industrial Accident Board (the "Board") held a hearing on March 23, 2017.[10]

---

[4] Bd.'s Dec. at 2.

[5] Cl.'s Appeal at 2; Employer/Appellee's Answ. Br. on Appeal (hereinafter "Empl.'s Answ.") at 2; Bd.'s Dec. at 2.

[6] Those injuries include Claimant's right knee and lower back. Cl.'s Appeal at 2. Employer, again, acknowledged Claimant's injured right foot. *Id.*

[7] Bd.'s Dec. at 2.

[8] Empl.'s Answ. at 3.

[9] Cl.'s Appeal. at 3.

[10] Empl.'s Answ. at 3. Prior to the hearing, the Termination Petition was resolved and Employer issued an open Agreement for temporary partial disability benefits ("TPD") at $679.63 per week, effective March 21, 2017, which Employer alleges Claimant continues to receive. *Id.*

3

The Board granted Claimant's Second Petition on August 15, 2017.[11] The Board found that Claimant's work accident caused "meniscal tears in Claimant's right knee, and aggravated Claimant's preexisting lumbar spine condition to include an L3-4 herniated disc and extruded fragment."[12] Employer was ordered to pay the medical expenses related to Claimant's right knee and his low back injuries.[13]

Claimant's medical complications continued.[14] After a lumbar surgery in 2016, Claimant underwent emergency surgery for a rectal prolapse.[15] Additionally, Claimant developed a torn meniscus in the left knee resulting from his altered gait, which required surgery as well.[16] Employer denied the compensability of these additional "injuries and conditions" relating to Claimant's 2015 work accident.[17]

In August of 2018, the parties attempted mediation to no success.[18] On April 4, 2019, Claimant filed another Petition to Determine Additional Compensation Due (the "Third Petition") and a Petition for Disfigurement.[19] Claimant presented those two Petitions to the Board on September 27, 2019.[20]

---

[11] Cl.'s Appeal at 3; *See Quaile v. TBC Corp.*, I.A.B. No. 1432280 (Aug. 15, 2017).
[12] *Id.*
[13] *Id.* (citing *Qualie*, I.A.B. No. 1432280, at *32 (Aug. 15, 2017)).
[14] *Id.* Claimant contends those complications involved catheterization, anesthesia and constipation in connection with Claimant's 2016 lumbar surgery. *Id.*
[15] *Id.*
[16] *Id.*
[17] Cl.'s Appeal at 3.
[18] *Id.* at 4.
[19] *Id.*; Bd.'s Dec. at 4. The Third Petition alleged permanent impairment regarding several body parts and acknowledgement of the left knee injury, erectile dysfunction, rectal injury and all related medical treatment. *Id.*
[20] Cl.'s Appeal at 4.

The Board issued its decision concerning the Third Petition and Petition for Disfigurement on February 7, 2020 (the "February 2020 Decision").[21] The Board found Claimant's rectal injury and surgery, as well as the left knee injury and surgery were "causally related" to the 2015 work accident.[22] The Board ordered Employer to pay Claimant's compensable medical expenses "according to the fee schedule" set forth in 19 *Del. C.* §2322B.[23]

Claimant still was unsatisfied with the Board's decision and filed a Motion for Reargument on March 2, 2020.[24] That same day, Claimant sent Employer a *Huffman* demand[25] for payment of all outstanding medical expenses with

---

[21] Cl.'s Appeal at 4. *See Quaile v. TBC Corp.*, I.A.B. No. 1432280 (Feb. 7, 2020).

[22] Bd.'s Dec. at 4.

[23] Cl.'s Appeal at 4; *Quaile v. TBC Corp.*, I.A.B. No. 1432280, at *27, n.13 (Feb. 7, 2020). Claimant filed a motion for reargument, which the Board denied. *See Quaile v. TBC Corp.*, I.A.B. No. 142280 (Apr. 24, 2020). The Workers' Compensation Oversight Panel established a fee schedule (the "fee schedule") for all Delaware workers' compensation funded procedures, treatments and services based on expertise in the field. *See* 19 *Del. C.* §2322B(3)(a). A brief history recitation of Delaware's current health care payment system ("HCPS") is relevant for Claimant's appeal. In 2008, the Delaware General Assembly enacted the HCPS to streamline medical payments through a transparent process, "eliminating cost-shifting among health care service categories and avoiding institutionalization of upward rate creep." 19 *Del. C.* §2322B(1). The HCPS is codified at 19 *Del. C.* §2322 and sets forth the process by which payments for injuries or death and incidental benefits under the Workers' Compensation Act (the "Act") may be calculated and furnished; it includes the adoption of a fee schedule.[23] The HCPS and the fee schedule apply to *all* treatments for sustained injuries covered under the Act if such treatment was provided on or after May 23, 2008. The parties do not dispute Claimant's treatments at issue are consistent with 19 *Del. C.* §2322(a) and incurred after May 23, 2008. Bd.'s Dec. at 10.

[24] *Id.* at 4. The Motion for Reargument was based on (i) the Board's denial of permanent impairment benefits regarding Claimant's rectal injuries; and (ii) the Board's order that the compensable medical expenses were to be paid according to the fee schedule. *Id.*

[25] A *Huffman* demand provides the vehicle for a claimant to collect unpaid workers' compensation. *See, e.g., Ramirez v. Murdick*, 948 A.2d 395 (Del. 2008).

5

instructions to remit payment directly to Claimant.[26] Claimant's *Huffman* demand

sought payment of the entire amount of Claimant's medical expenses billed to the

private health insurer – $226,408.93.[27] If Employer disputed Claimant's entitlement

to the full amount of bills, however, Claimant demanded, at a minimum, he be paid

the amount that would have been payable under the fee schedule of the Workers'

Compensation Act (the "Act").[28] As a result of the *Huffman* settlement, Employer

paid Claimant (i) $49,820.08 representing the fee schedule amount of Claimant's

medical bills; and (ii) $42,679.92 for *Huffman* damages, plus attorney's fees,

prejudgment interest and court costs.[29] The Board eventually denied the Motion for

Reargument on April 24, 2020 (the "April Order").[30]

Claimant appealed the Board's February 2020 Decision and the April Order

to this Court, arguing the Board "erred by precluding [Claimant] from recovering

---

[26] Bd.'s Dec. at 5. Claimant enclosed a spreadsheet tallying the total amount of bills for each provider but did not include supporting medical records. *Id.* Claimant contends Employer was already in possession of the relevant medical records by virtue of discovery exchanged in connection with the 2017 and 2019 hearings. *Id.*

[27] *Id.* at 6. These costs include coverage for Claimant's treatments concerning his right knee, low back, rectal prolapse and left knee. Empl.'s Answ. at 2. The private health insurance company paid $89,290.74 of Claimant's medical expenses. *Id.*

[28] Bd.'s Dec. at 6.

[29] Empl.'s Answ. at 5. According to Employer, workers' compensation paid Claimant $4,066.42 and workers' compensation adjustments totaled to $5,734.56. *Id.* at 2.

[30] Bd.'s Dec. at 4. The Board denied the Motion for Reargument for both (i) the permanent impairment issue and (ii) the medical expenses/fee schedule issue. *Id.*; *see supra* n. 24. The Board denied Claimant's claims because his treatment service dates were all rendered after May 23, 2008 and, as such, those expenses were subject to the fee schedule under Section 2322B of the Act. *Id.* at 5.

6

the total amount of medical expenses billed to his private health insurance, pursuant to the collateral source rule and 19 *Del. C.* §2322(b)."[31] Section 2322(b) reads:

> If the employer, upon application made to the employer, refuses to furnish the services, medicines and supplies mentioned in subsection (a)[32] of this section, the employee may procure the same and shall receive from the employer the reasonable cost thereof within the above limitations.[33]

On November 10, 2020, this Court reversed and remanded the Board's February 2020 Decision and the April Order with instructions "for the Board to determine whether the collateral source rule and 19 *Del. C.* §2322(b) remain viable theories of recovery in workers' compensation, despite the enactment of the fee schedule."[34]

---

[31] Cl.'s Appeal at 4-5.

[32] 19 *Del. C.* §2322(a) reads: "During the period of disability the employer shall furnish reasonable surgical, medical, dental, optometric, chiropractic and hospital services, medicine, and supplies, including repairing damage to or replacing false dentures, false eyes or eyeglasses and providing hearing aids, as and when needed, unless the employee refuses to allow them to be furnished by the employer."

[33] To avoid confusion, the Court reminds the reader to observe the difference between 19 *Del. C.* §2322**(b)** and 19 *Del. C.* §2322**B**. (emphasis added). *Compare* Section 2322(b) "Medical and other services, and supplies as furnished by the employer" *with* Section 2322B "Procedures and Requirements for Promulgation of Health Care Payment Systems."

[34] Cl.'s Appeal at 5; *Quaile v. TBC Corp.*, 2020 WL 6588746 (Del. Super. Nov. 10, 2020). The Court's ruling affirmed the Board's decision not to award Claimant permanent impairment benefits pursuant to the AMA Guides, finding that decision was supported by substantial evidence. Bd.'s Dec. at 6. But in light of 19 *Del. C.* §2326(g), the Court reversed the Board's decision not to award permanent impairment benefits absent an ongoing condition. *Id.* at 6-7. The Court remanded the case to the Board to determine: (1) the amount of permanent impairment benefits owed; and (2) whether the collateral source rule and 19 *Del. C.* §2322(b) remain viable theories of recovery in workers' compensation law despite the enactment of the fee schedule. *Id.* at 7. The parties advised the Board they settled the remanded permanent impairment issue. *Id.* at 7. The issue before the Board, therefore, only involved the collateral source rule and 19 *Del. C.* §2322(b). *Id.*

A remand hearing was held before the Board on August 24, 2021.[35] Claimant, again, sought an award for the full amount of medical expenses billed to the private health insurance, less the amount Employer already paid pursuant to the fee schedule as a result of the *Huffman* litigation, the value of which was $176,588.85.[36] The parties stipulated that the total amount of medical expenses billed to Claimant's private health insurance was $226,408.93, of which private health insurance paid $89,290.74. There were private health insurance adjustments and/or reduction in the amount of $120,181.11 and a balance of $16,818.86.

On December 10, 2021, the Board entered a decision (the "2021 Decision") finding, in light of the fee schedule, the collateral source rule and 19 *Del. C.* §2322(b) are no longer viable theories of recovery under workers' compensation law.[37] The Board declined to award Claimant any additional medical expenses because Employer had already paid Claimant the fee schedule rate as a result of the *Huffman* litigation.[38] Claimant was unsatisfied with the 2021 Decision and filed the instant appeal.

---

[35] Bd.'s Dec. at 8.
[36] Cl.'s Appeal at 6. The value is calculated by subtracting the fee schedule amount ($49,820.08) from the full amount paid by the private health insurance ($226,408.94). *Id.* (citing A23 ¶ 22. Tr.); Empl.'s Answ. Ex. B, Appx.
[37] Cl.'s Appeal at 6; *Quaile v. TBC Corp.*, I.A.B. No. 1432280 (Dec. 10, 2021).
[38] Cl.'s Appeal at 6.

8

## II. STANDARD OF REVIEW

When reviewing an appeal from a decision of the Industrial Accident Board, the Court's role is (i) to examine the record for errors of law; and (ii) determine whether the Board's findings of fact and conclusions of law are supported by "substantial evidence."[39] Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion.[40] The Court does not weigh the evidence before it, evaluate credibility or make its own factual findings.[41] Those functions are vested in the Board.[42]

Pertinent to this appeal, errors of law are reviewed *de novo*. Absent such error, the standard of review for a Board's decision is abuse of discretion.[43] The Court will find abuse of discretion only when a Board's decision exceeds the bounds of reason when considering the circumstances.[44] In the absence of an error of law, lack of

---

[39] *Person-Gaines, v. Pepco Holdings, Inc.*, 981 A.2d 1159, 1161 (Del. 2009).

[40] *Olney v. Cooch*, 425 A.2d 610, 614 (Del. 1981) (citing *Consolo v. Federal Maritime Commission*, 383 U.S. 607, 620 (1966)). The Board reviewed (i) Claimant's testimony, (ii) spreadsheets, (iii) a copy of Section 2322(b), and (iv) the first page of the Department of Labor's Public Notice of the Instructions and Guidelines surrounding the original proposal for the establishment of the Health Care Payment System for purposes of its decision. Bd.'s Dec. at 8-9. The evidence became part of the record without objection. *Id.* at 8. The parties do not dispute whether the above constitutes "substantial evidence." *See* Cl.'s Appeal; Empl.'s Answ.

[41] *Person-Gaines, v. Pepco Holdings, Inc.*, 981 A.2d at 1161.

[42] *Johnson v. Chrysler Corp.*, 213 A.2d 64, 66 (Del. 1965).

[43] *Person-Gaines, v. Pepco Holdings, Inc.*, 981 A.2d at 1161 (Del. 2009) (citing *Stanley v. Kraft Foods, Inc.*, 2008 WL 2410212, at *2 (Del. Super. Ct., Mar. 24, 2008)).

[44] *Stanley v. Kraft Foods, Inc.*, 2008 WL 2410212, at *2 (internal citations omitted).

9

substantial evidence or abuse of discretion, the Court will not disturb the decision of the Board.[45]

## III. DISCUSSION

This appeal involves the interplay between two provisions of the Act, Section 2322(b) and Section 2322(B). Section 2322(b) permits a claimant to recover medical expenses from an employer where the employer refuses to pay for the expenses and the employee procures treatment for same. Section 2322(B), enacted in 2007, well after the adoption of §2322(b), establishes the fee schedule for medical expenses under the Act. The precise question in this case is whether a claimant who pursues medical expense benefits under §2322(b) is limited in his claim to the fee schedule amounts as controlled by §2322(B). To answer this question, the Court must engage in an interpretation of these two sections of the Act.

Certain guiding principles control how this Court goes about its task of interpretation. First, if the intent of the legislature is clear by the plain language then the words of the statute will control.[46] If the statute is not clear and there are two conflicting sections of the statute that are in play, this Court is obligated to construe the two sections of the statute in a way that reads both sections together so as to make one harmonious whole of the statute.[47] The Delaware Supreme Court has made

---

[45] *Sweeny v. Delaware Dept. of Transp.*, 2013 WL 1859339 (Del. Super. Ct. Apr. 26, 2013).
[46] *State v. Cephas*, 637 A.2d 20, 23 (Del. 1994).
[47] *In Re: Port of Wilmington Gantry Cane Litigation*, 283 A.3d 921 (Del. 2020).

10

it clear that, when interpreting the Act, courts must liberally construe the Act because of the benevolent purpose of the Act.[48]

Section 2322(b), by its plain language, permits an employee to procure the medical treatment where the employer refuses the treatment and allows the employee to receive from the employer the reasonable cost of the same. The only limitation under §2322(b) is that the costs be "reasonable." Section 2322(b) is surely consistent with the overreaching purpose of the Act which is the prompt payment of benefits, including medical treatment, without regard to fault.[49]

As set forth in Section 2322(B), known as the Workers' Compensation Health Care Payment Rates for Physicians and Hospitals, the purpose of the fee schedule is:

> [T]o establish a system that eliminates outlier charges and streamlines payments by creating a presumption of acceptability of charges implemented through a transparent process, involving relevant interested parties, that prospectively responds to the cost of maintaining a health care practice, eliminating cost shifting among health care services categories, and avoiding institutionalization of upward rate creep.

---

[48] *Mosely v. Bank of Delaware*, 372 A.2d 178 (Del. 1977); *Zallea Bros. v. Cooper*, 166 A.2d 723, 726 (Del. 1960).

[49] *Champlain Cable Corp. v. Employers Mut. Liability Ins. Co. of Wisconsin*, 479 A.2d 835, 840 (Del. 1984).

In short, the fee schedule sets rates of payment for treatment of workers compensation injuries making the need for claimants and/or qualified medical providers to obtain pre-authorizations for most treatment unnecessary.

Nothing in the clear words of §2322(B) addresses the issue that arises when an employee is forced to procure and pay for medical services that an employer refuses to cover. As such, the Court must liberally construe the statute to ensure that the overriding purpose of the statute is achieved. When the statute is liberally construed, the only conclusion that can be reached is that the provisions of §2322(b) were not rendered nonviable by the adoption of §2322(B). The Court rejects the Board's legal conclusion that the plain language of the Act no longer allows reimbursement of medical expenses at a rate higher than the fee schedule amount.

To adopt the Board's rationale violates a crucial purpose of §2322(b), which is to provide a remedy in situations where claimants are forced to pay for their own medical expenses following an employer's refusal to pay and such expenses are later found compensable. When an employee is forced to seek and pay for medical treatment that an employer refuses to pay, the employee does not have the benefit of the fee schedule which limits what the employee can be charged. The employee is forced to pay whatever the market demands for that payment. To leave the employee in a situation where he is responsible for amounts beyond those provided by the fee

12

schedule, where there has been a refusal to pay, violates the very purposes underlying the Act.

Having found that §2322(b) remains a viable cause of action, the question becomes what the Claimant is entitled to recover. Claimant maintains that the collateral source rule applies to this case and, as a result, Claimant is entitled to the full amount of the medical bills incurred regardless of any health insurance reductions, write offs or balances remaining. Employer maintains that the collateral source rule is not applicable to this case.

The parties' focus on the applicability of the collateral source rule as to what is recoverable by the Claimant is misplaced. The guidepost on what Claimant is entitled to recover is the "reasonable" requirement found in §2322(b). To permit another approach, namely recovery beyond what the Claimant lost, would violate the purposes of both §2322(b) and §2322(B). By focusing on what is the reasonable cost, under the circumstances of this case, the purposes behind both §2322(b) and §2322(B) are achieved.

A reasonable cost does not equate to recovery for the undiscounted medical bills because such an approach violates Section 2322(B). The reasonable cost in this case is the actual loss that the claimant suffered because he was forced to pursue the

medical treatment, due to the employer's refusal to pay for the treatment.[50] In this case, that means the Claimant is entitled to recover the amount of his outstanding balances that his private health insurer did not pay.[51] The parties have stipulated that the Claimant's outstanding balance totals $16,818.86 – the reasonable cost in this case.

The Employer contends that §2322(b) was never triggered because the Claimant never asked the Employer to approve the treatment. On this point, the Board held that the "employer/insurance carrier were not formally asked to approve or deny the relevant treatment, and therefore," there was never a refusal or a formal denial issued to trigger §2322(b). The Board's holding on this point is legally erroneous and unsupported by the evidence.

In *Ralyea v. KF Envtl. Tech*,[52] the Court addressed the precise issue presently before the Court. In *Ralyea*, the Court reversed the Board's decision finding that the claimant failed to meet the requirements of §2322(b) because he did not first request

---

[50] Entitlement to benefits under §2322(b) does not depend on whether the employer had a good faith basis to deny benefits. To read a good faith basis into the statute would render the statute meaningless and would leave a claimant without a remedy where the employee can prove that the medical expenses were related to a work injury.

[51] The parties have agreed that there is no claim in this case for subrogation in favor of Claimant's private health care carrier. As such, the Court will not consider this claim nor whether those amounts are reasonable under the instant circumstances.

[52] 2005 WL 697942 (Del. Super. Ct. Feb. 28, 2005).

medical treatment from the employer before seeking treatment on his own.[53] The

Court explained:

> The language of Section 2322(b) states the general principle that "the employee should ordinarily not incur medical expenses without first giving the employer a reasonable opportunity to furnish such services, and an employee who does so will be liable for that expense." The purpose behind this notice requirement is to protect the employer against unreasonable charges and possible fraudulent claims. The employer must have "some knowledge of accompanying facts connecting the injury or illness with the employment, and indicating to a reasonably conscientious manager that the case might involve a potential compensation claim." The employee need not give formal notice in order to recover as long as the employer has "sufficient knowledge of the injury." Once the employee has "furnished the employer with the facts of the injury" the employer must then instruct the employee on how to seek treatment.[54]

Section 2322(b) does not expressly say that a claimant who fails to obtain a

prior refusal from the employer is barred from recovering for reasonable and

necessary medical treatment.

The *Ralyea* Court further held:

> [W]here the record shows that the employer was aware that a work-related injury had occurred, … the employer should identify some prejudice, or some knowing failure of the employee to follow company policy, or some other circumstances sufficient to justify relieving it of the obligation to pay for the employee's medical treatment.

---

[53] *Id.* at *10.
[54] *Id.* at *10, 12 (emphasis added) (citations omitted).

In the instant case, Employer was well aware of Claimant's injury. The accident was captured on video, immediately reported to employer and the carrier and Claimant received emergency medical care. Employer also terminated Claimant's employment one month after the accident because the Claimant's injuries prevented him from performing his job duties. Moreover, neither Employer nor the Board identified any prejudice or other circumstance (outside the fee schedule) which would justify relieving Employer of the obligation to pay the medical expenses at issue.

Even if the law required an employer's denial of treatment to trigger §2322(b), Claimant could easily make such a showing here. Indeed, the carrier denied the entirety of Claimant's claim as early as September 30, 2015.[55] In December 2015, Employer reiterated its denial in writing.[56] The carrier also accommodated Claimant's request for a letter denying treatment for the back injury, specifically in order for Claimant to utilize his private health insurance for lumbar surgery.[57] To require the employee to continue to ask for payment of bills where the claim has been denied is not required and would be a futile exercise.[58]

---

[55] A29-A30.
[56] A28.
[57] A31.
[58] *See Lukk v. State Farm Mut. Auto Ins., Co.*, 2014 WL 4247767 (Del. Super. Ct. Aug. 27, 2014).

16

Accordingly, the Board's finding that under §2322(b), a "formal request" and "formal denial" were both required, and absent, is legally erroneous and unsupported by the evidence.

Under the facts of this case and established law, §2322(b) was triggered and Claimant is entitled to recover the reasonable cost of his medical treatment from employer which, in this case, are the outstanding amounts of his medical bills in the amount of $16,818.86

## CONCLUSION

The Board's December 10, 2021 Decision is **REVERSED**. Claimant is awarded $16,818.86 in medical bills.

**IT IS SO ORDERED.**

Jan R. Jurden, President Judge

*Original to Prothonotary*

17